SPITLER ET AL. *v.* SCHELL, ADMINISTRATOR OF THE ESTATE OF MILO WARD STACKHOUSE.

[No. 30,742. Filed March 18, 1965. Rehearing denied April 21, 1965.]

*Robert S. Justice,* of Logansport, and *Bowen, Myers, Northam & Givan,* of Indianapolis, for appellant.

*O'Neill & O'Neill,* of Logansport, for Appellee.

ARTERBURN, C. J.—This case comes to us on transfer from the Appellate Court of Indiana. (See 202 N. E. 2d 405 for opinion of Appellate Court.)

The action below as brought by the appellee as administrator of the estate of Milo Ward Stackhouse, deceased, against the appellants, Bill G. Spitler and Margaret T. Spitler. The appellee-administrator brought an action to set aside a deed alleged to have been obtained by the appellants from the decedent by deception and fraud. The trial court overruled the appellants' demurrer to the appellants' amended complaint. The is-

sues were submitted to the court without a jury and the court found for the plaintiff-administrator and that the deed should be set aside and that the plaintiff recover damages from the defendant in the amount of $5,000.00.

The only errors presented by the brief of appellants are the specifications in the motion for a new trial that the court erred in overruling the demurrer to the amended complaint and that the decision of the court was not sustained by sufficient evidence. The other specifications are waived by failure to support them as required by Rule 2-17 (f).

The demurrer to the amended complaint was grounded upon the contention that it failed to allege that the real estate was liable for and needed for the payment of the debts of the decedent and the costs of administration of the estate.

It is conceded by the parties that prior to the enactment of the Probate Code of 1953, Acts of 1953, ch. 112, §1301, p. 295, such an allegation was necessary in the complaint of the sort we are considering here. *Richcreek* v. *Richcreek* (1946), 116 Ind. App. 422, 64 N. E. 2d 308. The appellants now claim that the new Probate Code did not change the well-established law in that respect. It is claimed that an examination of the amended complaint clearly discloses it is merely an action to recover real property alleged to have been fraudulently obtained from the decedent, and asks that the conveyance be set aside in favor of the heirs; that the heirs are the real parties in interest, and the personal representative has no right to maintain the action in the absence of an allegation and showing that the real estate is needed to pay debts. The new Probate Code, Burns' Ind. Stat. Anno. §7-701, reads in part:

> "*Possession of assets of estate.*—Every personal representative shall have a right to, and shall take, possession of all the real estate and personal property of the decedent except the homestead of

the surviving spouse and minor children. He shall pay the taxes and collect the rents and earnings thereon until the estate is settled or until delivered by order of the court to the distributees. He shall keep in tenantable repair the buildings and fixtures under his control and may protect the same by insurance. He may maintain an action for the possession of the real estate or to determine the title to the same."

The comment of the Probate Code Commission following this section is in part as follows:

"In substance this section provides that the personal representative shall take possession of both real and personal property except the homestead and is charged with the duty of collecting rents, paying taxes, keeping in repair and keeping the premises insured. He may also bring an action for possession *or to determine the title to the same.* He takes title to the personal property but not to the real estate, the same as under the present law. He keeps possession until the estate is finally settled or the court orders it turned over to the beneficiary entitled thereto." (Our italics)

To us, this section of the statute is quite plain. However, appellants contend that the above section is limited and must be read in connection with Burns' Ind. Stat. Ann. §7-704, which reads as follows:

*"Assets liable for payment of creditors' claims —Recovery—Fraudulent transfer.*—The real and personal property liable for the payment of debts of a decedent shall include all property transferred by him with intent to defraud his creditors or any of them, or transferred by any other means which is in law void as against his creditors or any of them; and the right to recover such property, so far as necessary for the payment of the debts of the decedent, shall be in the personal representative, who shall take such steps as may be necessary to recover the same. Such property shall constitute general assets for the payment of all creditors; but no property so transferred shall be taken from anyone who purchased it for a valuable consideration, in good faith and without knowledge of the fraud."

We see no conflict whatever in these two sections. The above section deals with conveyances "to defraud his creditors or any of them" as distinguished from ▮▮ transactions in which creditors of the decedent are not involved but in which the transferee has committed fraud against the decedent in obtaining title to the real estate. In the latter instance, where the decedent is innocent of fraud, he or those standing in his place or stead may set aside such conveyance; while in the former case, where the decedent has participated in the fraud to evade the payment of his debts, to the hindrance of his creditors, neither he nor his heirs or those standing in his place or stead may set aside the conveyance. The law will not permit one to benefit from his own fraud. In reading Burns' §7-704 above, it will be noted that the personal representative may recover only such amount "so far as necessary for the payment of debts of the decedent." In other words, the creditors, being the defrauded parties, are the only ones who may benefit by setting aside such a conveyance. The heirs, devisees or legatees may not benefit from such transaction. Professor John Grimes, in Henry's Probate Law and Practice, Vol. 1, p. 817, makes this clear:

> "Transfers of decedents while incompetent can be avoided by the personal representative, but such right of recovery does not depend on its being necessary to pay debts.
>
> . . .
>
> "While the statute (Burns' §7-704) applies only to transfers made in fraud of creditors, it does not preclude the personal representative from prosecuting any suit that could have been brought by the decedent, or his representative, while alive, to set aside a transfer as being made in consequence of a fraud on him, as a transfer while the decedent was incompetent.
>
> . . .
>
> "In such a case the fruits of the recovery by the

personal representative would become general assets of the estate.

. . .

"The court has also power at the instance of the personal representative to try title to property believed the asset of the estate."

29 Indiana Law Journal 251, at page 278 makes the following statement:

"He may maintain an action for the possession of the real property or to determine the title to the same.

"Logically, if the personal representative has the duty to take control of the entire estate, he must be able to enforce his right to possession of the realty. Under previous Indiana law the executor or administrator could not bring an action in connection with the real estate unless it could be demonstrated that it was needed for the payment of debts. At common law, of course, the real property was completely beyond his bailiwick. Consequently, a statutory provision similar to the foregoing is essential to validate any litigation relating to the real estate brought in the name of the personal representative. Moreover, since the title to the real estate is in the heirs or devisees in almost every state, a statute authorizing the personal representative to bring suit would be necessary to make him the real party in interest."

It is therefore apparent under the new Probate Code that the personal representative of the decedent may bring an action to recover assets, whether personal or real, to which the decedent in his lifetime would have been entitled and of which the decedent was guilty of no fraud personally in conveying. The right to bring such an action is specifically vested in the personal representative as to real estate, even though title or beneficial interest in such real estate remains in the heirs and devisees. This makes for a more orderly distribution of the estate, the marshalling of the assets and the liquidation of real estate rather than per-

sonal property when desirable in some instances, for the payment of legacies, debts or taxes.

Burns' Ind. Stat. Anno. §7-704 is applicable only for the purpose of recovering property which has been transferred by the decedent in fraud of his creditors, and the action by the personal representative of the decedent is only for the benefit of the creditors and not for the benefit of those taking through the decedent. It is therefore necessary in such a complaint to show that the transaction was made in fraud of creditors and that the creditors were unpaid at the time of the death of decedent and such property is needed to pay such creditors. However, the amount recovered under the statute can be only "so far as necessary for the payment of debts of the decedent." However, such an allegation is not necessary when the personal representative brings an action to recover real estate which the decedent would have been entitled to bring because of fraud committed against him.

In view of the above interpretation, we find the trial court did not err in overruling the demurrer to the amended complaint.

The final contention is made that the decision of the court is not sustained by sufficient evidence. We need but briefly to review the evidence in this case.

The decedent, Milo Ward Stackhouse (approximately 80 years old) made a deed on January 18, 1958 of 120 acres of his land to the two appellants, who were neighbors living near him. He was in poor health and lived alone. The appellants agreed in substance to take care of the decedent during the remainder of his life, furnish him with food, clothing and shelter and give him $2.00 per week, and also agreed to pay his medical expenses up to $1,000.00 and funeral expenses. On January 23, 1959 the decedent was committed to the Logansport State Hospital for Insane by the judge of the Cass Cir-

cuit Court, and died at the institution on April 4, 1959. It is admitted by the parties on both sides that the decedent was mentally retarded most of his life; that as he advanced in years, he weakened more mentally. There was testimony to the effect that the appellants did not keep their agreement to take care of him. Witnesses stated they found him living in a brooder house in cold, rainy weather in November; that he was dirty and unshaven and looked like a wild man; that he had lost a great deal of weight; that he was irrational in some of his talk. One Doctor testified to the effect that "it was evident that the man did not know what he was doing and should have been protected for the last nine years. This would have been apparent to intelligent persons."

The evidence is quite voluminous and conflicting, but we may not as a court of appeals, weigh this evidence. The trial court could properly have concluded from the evidence that the decedent could not and did not comprehend the nature of the business in which he was engaged when he signed the deed, and that he therefore did not have capacity to make the deed or contract. We therefore find that the decision of the trial court was sustained by sufficient evidence.

Transfer granted.

The judgment of the trial court is affirmed.

Achor, J., concurs.

Jackson, J., concurs in result.

Myers, and Landis, JJ., not participating.

NOTE.—Reported in 205 N. E. 2d 155.