602 N.E.2d 1024 (1992)
In the matter of the Estate of August F. Banko, Deceased.
Carol Banko Rogers, Appellant-Petitioner,
v.
THE NATIONAL CITY BANK OF EVANSVILLE, Personal Representative, Appellee-Respondent.
No. 82A01-9205-CV-149.
Court of Appeals of Indiana, First District.
November 9, 1992.
Rehearing Denied December 18, 1992.
*1026 James D. Johnson, Mattingly, Rudolph, Fine & Porter, Evansville, for appellant-petitioner.
R. Eugene Johnson, Thomas J. Kimpel, Statham, Johnson & McCray, Evansville, for appellee-respondent.
ROBERTSON, Judge.
Carol Banko Rogers appeals the denial of her petition to reopen the estate of her father, August F. Banko. Her appeal causes us to resolve the tension which exists between the duty of a personal representative to marshal the assets of an estate and the effects of a nonprobate transfer of funds into a joint account with rights of survivorship in the surviving spouse.
We reverse.
August Banko died testate on April 21, 1990. His last will and testament was admitted to probate on May 3, 1990. The National City Bank of Evansville was appointed, qualified and acted as personal representative. On July 17, 1990, the Bank as personal representative, filed its inventory of probate assets. The inventory does not list any sums held in joint accounts. The personal representative's petition to determine inheritance tax, filed on August 23, 1990, likewise did not specifically identify personal property jointly held by Banko and his surviving spouse, Nadine, but contains only the typewritten words "jointly held with surviving spouse" on the appropriate schedule. Notwithstanding the personal representative's attempt to waive notice, appointment of an appraiser, and hearing on the appraiser's report on behalf of Banko's legatees and devisees on the inheritance tax form, the probate court appointed an appraiser whose report discloses only one joint bank account, that being the one held jointly with Rogers at Evansville Federal Savings Bank.
On October, 17, 1990, the personal representative filed its final account which was approved on December 19, 1990. Nadine Banko died in December, 1990, and her estate was opened on December 4, 1990. The National City Bank of Evansville became her personal representative as well. At Nadine Banko's funeral, Rogers learned that her sisters had received the personal representative's final accounting in her father's estate. Aware that her father had kept very accurate records of his finances, Rogers began asking questions of the personal representative about assets she believed to be missing from her father's estate. The personal representative shared some of the information he had obtained with her, namely, that he knew of at least one joint bank account, but refused to investigate further. The attorney for the personal representative informed Rogers that any joint accounts probably would have been in "CDs," that they had probably "rolled over," and that they would be almost impossible to find. Nadine Banko's daughter destroyed all of August Banko's personal financial records.
Thereafter, in April, 1991, Rogers hired her own attorney and caused summonses to be served upon various financial institutions in Evansville. By the time of the hearing on Rogers' petition to reopen the estate, Rogers had learned that a majority of the joint bank accounts held by her father and Nadine had been opened about 1981. Rogers was not able to obtain all the information she requested from various financial institutions because she was not her father's personal representative but she did discover that the proceeds of certain stocks her father had acquired from the estate of his second wife that had been placed in a joint purchasing account with Bristol Myers had turned up in Nadine Banko's estate. Rogers also discovered *1027 that $71,000 of Ratheon stock had been transferred only a few weeks before Banko's death, at a time when Banko not only was incapable of understanding what he was doing but was unable to write his own name. Rogers could not discover how the stock had been transferred.
The court released Banko's personal representative of any further responsibility on August 19, 1991 and closed the estate. Rogers filed her petition to reopen the estate on December 20, 1991. By her petition, Rogers sought to compel the personal representative of her father's estate to at least investigate whether assets jointly held at the time of her father's death by her father and his surviving spouse, Nadine, were assets subject to administration in Banko's estate. Rogers alleges in her petition that $400,000.00 of the funds held in the joint accounts with Nadine came from assets solely owned by her father before their deposit and that her father did not have the mental capacity to consent to the transfers. Rogers also alleges that the personal representative of her father's estate, intentionally or by mistake, failed to identify the funds as assets of the estate on inheritance tax schedules, but did so list the funds in the accounts as assets of Nadine Banko's estate and distributed them to Nadine Banko's devisee.
Rogers brought her petition to reopen the estate pursuant to Ind. Code 29-1-1-21 and I.C. XX-X-XX-XX, which provide in relevant part:
For illegality, fraud or mistake, upon application filed within one (1) year after the discharge of the personal representative upon final settlement, the court may vacate or modify its order, judgments and decrees or grant a rehearing therein... .
I.C. XX-X-X-XX.
If, after an estate has been settled and the personal representative discharged, other property of the estate shall be discovered, or if it shall appear that any necessary act remains unperformed on the part of the personal representative, or for any other proper cause, the court, upon petition of the discharged personal representative or any person interested in the estate and, without notice or upon such notice as it may direct, may order that said estate be reopened. It may reappoint the personal representative or appoint another personal representative to administer such property or perform such act as may be deemed necessary... .
I.C. XX-X-XX-XX.
In a case involving the reopening of an estate to try an omitted claim, brought pursuant to a predecessor of I.C. XX-X-X-XX, this court held that the statute is remedial in nature and should be liberally construed to the end that no undue advantage may be obtained by a party by reason of illegality, fraud, or mistake. James C. Curtis & Co. v. Blume (1944), 114 Ind. App. 675, 53 N.E.2d 549, 683. Review is akin to that employed for relief from a default judgment. Id. However, where there is doubt as to the sufficiency of the facts to show such illegality, fraud or mistake as will entitle a party to have a final settlement of a decedent's estate set aside, the trial court should resolve the doubt in favor of the applicant. Id. The court also held that the trial court had no authority to examine the merits of an omitted claim except insofar as they show that the party seeking to set aside such final settlement has an interest in the estate. Blume, 114 Ind. App. 675, 54 N.E.2d 286, on rehearing. Typically, this court applies an abuse of discretion standard when relief from judgment is sought pursuant to Ind.Trial Rule 60(B). Markle v. Indiana State Teachers Ass'n (1987), Ind., 514 N.E.2d 612, 614.
Indiana Code 29-1-17-14, the other section relied upon by Rogers, does not compel the probate court to reopen an estate, but provides that, upon proper showing, the probate court in its sound discretion may either proceed by reopening the estate and appointing an administrator de bonis non to prosecute an action to recover funds or in lieu thereof order direct distribution of the unadministered assets. McGahan v. National Bank of Logansport (1972), 151 Ind. App. 658, 281 N.E.2d *1028 522, 527. Inasmuch as both sections employ the term "may," it would be appropriate for this court to review the decision to deny a reopening of the estate for an abuse of discretion. A probate court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court. Matherly v. Matherly (1983), Ind., 457 N.E.2d 220, 221.
The estate contends that Rogers is not entitled to maintain her petition because she has not alleged that she did not receive notice of the final settlement of the estate. The estate relies upon Overbeck v. Harmeyer (1975), 164 Ind. App. 576, 331 N.E.2d 41, which cites Crum v. Meeks (1891), 128 Ind. 360, 27 N.E. 722, for the rule that a petitioner must allege and show that she did not receive notice of the final settlement or appear at the hearing on it to obtain relief. But, while the Harmeyer decision does recite the general proposition of Meeks, as the estate contends, 331 N.E.2d at 43, the proposition is merely dicta, for the issue in Harmeyer raised by executor Overbeck, is whether the statute, I.C. XX-X-X-XX, required the trial court to notify the executor and all interested parties as a condition precedent to the court's order to vacate its own order approving the final report and ordering distribution. This court held that Overbeck could not complain that he had not been served with notice of the petition to vacate or hearing on it, because Overbeck attended a hearing on the petition to set aside the order approving the executor's final report and thus knew about the petition.
Harmeyer is therefore not on point. There are, however, many older reported decisions which require a petitioner seeking to reopen an estate to plead want of personal service. See e.g. Williams v. Williams (1890), 125 Ind. 156, 163, 25 N.E. 176 (citing Dillman v. Barber (1887), 114 Ind. 403, 16 N.E. 825). We decline to follow them. When the legislature adopted the present probate code, it expressed its intent to relieve applicants from the strict pleading requirements imposed at common law by enacting I.C. 29-1-1-9, which provides that "[n]o defect of form or substance in any petition, nor the absence of the petition, shall invalidate any proceedings." The intended effect of this provision, according to the Indiana Probate Code Study Commission Comments, is to prevent a defective petition from rendering a proceeding void. An opposing litigant may still insist upon the filing of an amended petition and proof of the necessary facts.
Rogers testified she did not receive a copy of the final report, Indiana inheritance tax schedules, or actual notice of the hearing on them. She did not appear at the hearing. The final account contains a recitation that notice was provided as required by law but there is not a notation in the docket by the clerk of mailing.
Although the estate was not formally closed for some time after the final account had been approved, Rogers attributes her delay in bringing her objections before the probate court to her reliance upon the representations made by the personal representative or its attorney that it would be almost impossible to trace the transactions. Banko's personal representative does not argue Rogers is guilty of laches, failed to use due diligence or unreasonably delayed in bringing her petition once she discovered grounds for objecting. The trial court could therefore not properly deny Rogers' petition to reopen the estate on the ground she had an opportunity to assert the facts she now alleges before the estate was closed.
Rogers insists that the estate should be reopened because the record shows omissions made in the administration of Banko's estate, among them, the failure to investigate and, if necessary, prosecute a cause of action for conversion or constructive fraud, and the failure to properly schedule jointly held assets for inheritance tax purposes. She maintains that as a fiduciary, Banko's personal representative owed her a duty to investigate and gather the assets of Banko, which it breached, adversely affecting her interests. We are inclined to agree.
The personal representative is regarded as a trustee appointed by law for *1029 the benefit and protection of creditors and distributees. Fall v. Miller (1984), Ind. App., 462 N.E.2d 1059, 1061. The fiduciary character of the relationship extends to all legatees. Id. at 1063. The personal representative bears a heavy burden in this regard for it is his duty to guard against error in the distribution by exercising the greatest possible care to see that all available evidence is fully and truthfully presented to the court in a hearing on a petition for distribution of the estate. Diaz v. Duncan (1980), Ind. App., 406 N.E.2d 991, 1002. The personal representative owes a duty to all interested parties to administer an estate impartially. Ind. Dept. of State Revenue v. Estate of Cohen (1982), Ind. App., 436 N.E.2d 832, 836.
The Indiana Probate Code specifically charges the personal representative with the responsibility of collecting and preserving all assets of the estate. Fall, 462 N.E.2d at 1063. The language of I.C. XX-X-XX-X is mandatory: the personal representative "shall" take possession of all of the decedent's property. To perform this duty, the personal representative is given the power to maintain suit for the recovery of possession of any property of the estate. I.C. XX-X-XX-XX. Indeed, I.C. XX-X-XX-XX specifically authorizes a proceeding where there is a dispute as to ownership between the estate and another person. It is the personal representative's duty to bring an action for conversion. Oberting v. Jutte (1926), 84 Ind. App. 208, 210, 150 N.E. 796. A personal representative who fails to use due diligence in collecting a claim due the estate becomes personally liable for any loss caused thereby. Cohen, 436 N.E.2d at 836. See also, I.C. XX-X-XX-X(c).
Banko's personal representative made no effort to investigate the circumstances surrounding the transfer of Banko's assets prior to his death. This fact is not disputed. The Bank insists that it was relieved of any duty to investigate into the source of contributions to joint accounts by the Nonprobate Transfers Act, which imposes a presumption, in the absence of clear and convincing evidence of a different intent at the time that a joint bank account with rights of survivorship is created, that sums in the account at the time of Banko's death belonged to the surviving joint tenant. See e.g. I.C. 32-4-1.5-4; 32-4-1.5-8.
We agree sums deposited in the type of joint account described in I.C. 32-4-1.5-4 are not subject to administration in Banko's estate. I.C. 32-4-1.5-6. These sums presumptively belonged to Nadine Banko, and now to her estate. Although Rogers offered excerpts from Banko's medical records tending to establish that Banko had asked his wife for assistance in managing his financial affairs about the time the accounts were created, that he was exhibiting symptoms of dementia, that the joint bank accounts were created merely for convenience, and that Banko did not intend to make a gift to Nadine of his contributions to the account, Rogers' evidence is not so conclusive as to permit only one reasonable inference. The probate court could have reasonably determined that Rogers failed to demonstrate by clear and convincing evidence either that Banko did not have the capacity to consent to the creation of the accounts at the time they were created or that he created the accounts with an intention different from that presumed by operation of law.
But, we cannot be persuaded that the Nonprobate Transfers Act was ever intended to shelter those who commit fraud or conversion to profit from their tortious behavior. While the funds belonging in these accounts may belong to Nadine's estate, if Nadine converted Banko's assets to her own use, her estate remains responsible for her tort, regardless of what she did with the sums she converted. The law will not permit one to benefit from his own fraud. Spitler v. Schell (1965), 246 Ind. 409, 414, 205 N.E.2d 155. The fruits become general assets of the estate. Id.
At least with respect to the transfer of Ratheon stock and the stocks specifically traceable to the estate of Banko's second wife, transfers which occurred immediately before Banko's death, at a time when he could neither consent nor sign his name, Rogers has established a *1030 prima facie case of constructive fraud which the personal representative had a duty to thoroughly investigate. The law raises a presumption of trust and confidence on one side and corresponding influence on the other from the existence of certain relationships, among them, husband and wife. Givens v. Rose (1978), Ind. App., 178 Ind. App. 590, 383 N.E.2d 448, 453 (citing Hunter v. Hunter (1972), 152 Ind. App. 365, 283 N.E.2d 775. Where such a relationship exists between two persons and the one occupying the superior position has dealt with the other in such a way as to sustain a substantial advantage, the law will presume that improper influence was exerted and the transaction was fraudulent. Id. The presumption arises regardless of any facts or circumstances having a tendency to show that a confidence was reposed by one of the parties and an influence gained by the other. Id. Proof of the existence of the relationship between the parties establishes prima facie that the dominant party to the relationship occupied a position of trust and confidence. Id. There can be no serious dispute that Rogers has demonstrated Nadine occupied the dominant position in the marital relationship at least with respect to the transfers which occurred immediately before Banko's death.
We observe, parenthetically, that the National Bank of Evansville, as personal representative of both August Banko's and Nadine Banko's estates, may be put in the position of both prosecuting and defending this claim. See e.g. State ex rel. Schumacher v. Adams Circuit Court (1947), 225 Ind. 200, 73 N.E.2d 689. But even if an investigation convinces the Bank that an action to recover the funds will not be successful, Rogers may nevertheless bring an action herself to obtain recovery of the funds. As a person interested in the estate, Rogers has standing to pursue a claim for conversion herself. McCoy v. Like (1987), Ind. App., 511 N.E.2d 501, 502 n. 1.
Rogers argues that Banko's personal representative was required by Indiana inheritance tax law to make and file a complete inventory of Banko's property, including a list of the accounts held jointly with his surviving spouse. This court has so held. Cohen, 436 N.E.2d at 836. But, the personal representative insists that it is only required to report "taxable transfers" and since the interest transferred to Banko's surviving spouse was exempt from inheritance tax, these joint accounts need not be listed on the schedules.
The personal representative's position finds support in I.C. 6-4.1-4-1 and the form's general instructions which require the personal representative to file a return with the probate court which contains "a statement of all property interests transferred by the decedent under taxable transfers." A "taxable transfer" means a property interest transfer which is described in clauses (1) and (2) of I.C. 6-4.1-2-1 and which is not exempt from the inheritance tax under sections 1 through 7 of I.C. 6-4.1-3. I.C. 6-4.1-1-14. The exercise of the rights of the surviving joint owner to the immediate ownership or possession and enjoyment of property jointly held by two individuals with rights of survivorship upon the death of one of the joint owners is a transfer described in I.C. 6-4.1-2-1(2). See also I.C. 6-4.1-2-4(5) and I.C. 6-4.1-2-5. But, as the personal representative asserts, each property interest which a decedent transfers to his surviving spouse is exempt from the inheritance tax imposed as a result of his death. I.C. 6-4.1-3-7(a).
Even so, a reading of the inheritance tax forms leads one inescapably to the conclusion that the Dept. of State Revenue has construed the provisions of Article 4.1 to require full disclosure of all assets owned by the decedent at the time of his death. The inheritance tax form, entitled "Schedule of All Property" is in effect a preprinted affidavit of the personal representative. Paragraph three on Schedule A dealing with transfers by will or intestate law does not seek a list of all taxable transfers, but all property. It states:
That Schedule A following and hereunto annexed,... sets forth fully and in detail all the real and personal property in the *1031 State of Indiana, and all the intangible personal property wheresoever situated, owned by the decedent, or in which he... had any right, title, or interest at the time of his ... death ... Excepting, however, such property ... as this decedent may have held or owned in joint tenancy with rights of survivorship with another or others, all of which, being listed in Schedule B herein... . Schedule A-1, following, sets for each and every parcel of real estate ... of which the decedent died seized ...
In a like manner, Schedule B-3  Joint Tenancies with Rights of Survivorships "contains a statement of all property in the joint names of the decedent and one or more other persons, including ... deposits of money in a bank, in which this decedent owned or had any interest at the time of his ... death ..." "It also contains a statement of the names of the surviving joint tenants..., their relationship to the decedent and the fair market value of said property at the time of the decedent's death." On this schedule, Banko's personal representative has typewritten the words "joint with surviving spouse." Schedule E sets forth the names of all persons beneficially interested in the estate at the time of decedent's death, "as well as those who may have received property listed in Schedule B." It also contains "a statement showing the amount of the exemption, if any, which is claimed by or on behalf of each of said beneficiaries ..." On this schedule the personal representative has listed Nadine N. Banko and claimed an exemption on Nadine Banko's behalf for better than $57,000, but contrary to the illustration on the form, does not trace the sum entered to any specific property or schedule.
The personal representative's signature follows Schedule E and numerical paragraph 14 which reads:
That deponent has made due and diligent search for property of every kind, nature and description left by the decedent, and has been able to discover only that set forth in Schedules A and B, and that no information of any other property of the decedent has come to his knowledge, and that he verily believes that decedent left no property except as therein set forth... . and that to the best of deponent's knowledge, information and belief the decedent made no gift, grant or conveyance of any property, real or personal, in contemplation of death, or to take effect in possession or enjoyment at or after death, except as may be specifically set forth in the appropriate sub-schedule of Schedule B.
In sum, the schedules in plain and unequivocal language require the personal representative to specifically identify all property belonging to the decedent at the time of his death. Exemptions are then claimed on Schedule E. Banko's personal representative apparently followed these instructions as to some property transferred to Nadine Banko but not all.
It is true that no express provision of Indiana Code Title 6, Article 4.1 requires the personal representative to identify all of the decedent's property, but neither does the article say that only taxable transfers are to be reported. The legislature has made the determination of the value of an estate's assets and the amount of inheritance tax due a judicial determination. Dept. of State Revenue v. Estate of Callaway (1953), 232 Ind. 1, 7, 110 N.E.2d 903. The court hears testimony, considers the inventory, appraisement and report, and all parties desiring to be heard. In the order determining the value of the estate and the amount of tax, the court finds and determines the fair market value of the property and further finds and determines the portions and amounts of the property of the decedent transferred, the name and relations of the persons beneficially entitled to receive the same, and the rate and amount of tax for which they are liable. Id. As the Indiana Tax court aptly pointed out in a recent case involving property tax schedules, the requirement of full disclosure is a clear and necessary procedure to insure the fair and accurate administration of the tax laws. Gulf Stream Coach v. State Board of Tax Commissioners (1988), Ind.Tax, 519 N.E.2d 238, 241. If an exemption could be claimed merely by omitting any mention on *1032 the tax return, the court would have to order a full audit of every estate to ascertain whether there was any property omitted, and if so, whether the omission was proper. The legislature has delegated the authority to determine which assets belong in an estate and which are subject to inheritance tax to the probate court, not the personal representative.
The inheritance tax schedules submitted by Banko's personal representative are incomplete and/or lacking in sufficient specificity to permit a fair and accurate appraisement of Banko's property. The reopening of the estate for the purpose of investigating into the circumstances surrounding the various transfers of Banko's assets will give the administrator de bonis non the opportunity to make the declarations on the inheritance tax schedules more specific and give the probate court an opportunity to assure itself that the accounts are, as Banko's personal representative has claimed, not subject to probate under Title 29.
We conclude that the probate court abused its discretion by refusing to reopen the estate for the limited purpose of investigating certain allegedly fraudulent transfers of assets immediately before Banko's death. The choice of an administrator de bonis non and any further action remain for decision by the probate court in its sound discretion.
Judgment reversed.
BAKER and BARTEAU, JJ., concur.