C. Jack **CLARKSON** and Mary Carolyn Kinder Hartman, Appellants–Defendants,

v.

Lorene **WHITAKER**, Appellee–Plaintiff.

No. 41A05–9408–CV–00337.

Court of Appeals of Indiana.

Oct. 31, 1995.

Rehearing Denied Dec. 20, 1995.

Robert G. Gulde, Rushville, for appellants.

Ronald C. Smith, William N. Ivers, Mark E. Wirey, Stewart & Irwin, Indianapolis, for appellee Michael J. Kias, Executor of E. Lorene Whitaker, Deceased.

Stephen L. Huddleston, Franklin, for Jack D. Frank, Trustee of the Lorene Whitaker Trust.

## OPINION

SHARPNACK, Chief Judge.

C. Jack Clarkson and Mary Carolyn Kinder Hartman appeal the trial court's judgment in favor of the defendant-appellees, Michael J. Kias as executor of the estate of Lorene Whitaker and Jack D. Frank as trustee of the Lorene Whitaker trust. Appellants raise two issues for review which we restate as follows:

1. whether the trial court properly determined the will did not create an irrevocable contract;

2. whether the trial court properly held the will was void for undue influence and fraud.

We affirm.

The facts most favorable to the trial court's judgment are as follows. Lorene Whitaker ("Lorene") was married to Robert Whitaker ("Robert"), and they did not have any children. Robert was the uncle of Clarkson and Hartman, while Lorene was the aunt of Frank. Lorene and Robert were both real estate brokers who engaged in buying and selling houses on contract.

Clarkson was the attorney for both Lorene and Robert. Clarkson prepared their taxes from the mid 1960's to the mid 1980's. During this period, Clarkson also drafted eight pairs of mutual wills for the couple.

In August of 1982, Clarkson drafted Lorene's and Robert's Last Wills and Testament which were the last of the series of mutual wills executed by the couple. The wills contained reciprocal provisions in which each will left the respective net estate to the surviving spouse for life. When the surviving spouse died, the net estates would pass to the beneficiaries. The explicit language of these wills stated they were irrevocable. An irrevocability clause is designed to defeat the surviving spouse's attempt to change her will after the death of the other. Both Lorene's and Robert's wills designated Clarkson and Hartman as substantial beneficiaries.

In September of 1982, Robert died and his 1982 Last Will and Testament was probated. In accordance with his will, Lorene received the entire estate. However, Lorene wanted to alter her 1982 Last Will and Testament ("1982 will") by substantially reducing the bequests to Clarkson and Hartman. On a number of occasions, Lorene asked Clarkson to return her original 1982 will, but Clarkson refused.

On April 7, 1988, Lorene executed a new Last Will and Testament ("1988 will"), which significantly reduced the bequests to Clarkson and Hartman, as well as removed them as residuary beneficiaries. The 1988 will essentially increased the bequests to Lorene's relatives at the expense of Robert's relatives. Moreover, Lorene required Clarkson and Hartman to execute a waiver of any right they may have had under the 1982 will in order to receive the gift under the 1988 will. Clarkson and Hartman refused to execute the waivers.

On March 27, 1989, Lorene commenced an action to declare the 1982 will void. Although the 1988 will stated that it revoked all previous wills, the 1982 will contained explicit language stating it was irrevocable. Therefore, as long as the 1982 will was valid, it created an irrevocable contract where Lorene's estate was bound by the terms of the 1982 will.

Clarkson and Hartman then opposed Lorene's action to void the 1982 will. On July 6, 1989, Lorene established an inter vivos trust into which she transferred the majority of her assets.

On April 28, 1990, Lorene died before her action to void her 1982 will went to trial. On May 1, 1990, Clarkson offered the 1982 will for probate, and was named executor of the 1982 will. On November 5, 1990, Kias challenged the 1982 will and filed a motion for summary judgment on behalf of Lorene's estate. On February 26, 1991, the trial court ruled in favor of Kias, and the 1988 will was admitted to probate.

On May 24, 1991, Clarkson and Hartman filed a complaint against Kias, Frank, and all the beneficiaries of Lorene's 1988 will. Clarkson and Hartman claimed that Lorene

breached her contract with Robert by revoking the 1982 will. On December 22, 1993, all previous cases were consolidated into one action. On May 13, 1994, the trial court issued findings of fact and conclusions thereon in which the court entered a judgment in favor of Kias and Frank. The relevant parts of the findings of fact are as follows:

### "FINDINGS OF FACT

10. Clarkson prepared a series of Last Will and Testaments for both Robert and Lorene, including wills executed on the following dates:

    a. November 19, 1965

    b. October 25, 1966

    c. January 18, 1969

    d. December 15, 1971

    e. January 17, 1974

    f. May 13, 1975

    g. August 16, 1976

    h. August 11, 1982

\*    \*    \*    \*    \*    \*

25. Beginning with the 1966 Wills, each and every will prepared by Clarkson for Robert and Lorene contained language of an irrevocable contract.

\*    \*    \*    \*    \*    \*

29. Whenever Robert and Lorene wanted to have a new will prepared for them by Clarkson, they would typically write out the changes that they wished to have made and they would submit those changes to Clarkson, who would then prepare the draft of a new will for both Robert and Lorene.

30. Clarkson did not explain the legal significance of the irrevocable contract to Lorene each time that a draft of a new Last Will and Testament was prepared by Clarkson for Lorene. Lorene testified in her deposition that she did not understand what the word "irrevocable" meant and that Clarkson did not go into any detail about it.

31. Clarkson did not explain the legal significance of the irrevocable contract contained within the Last Will and Testament prepared by Clarkson prior to the execution by Lorene and Robert of their 1982 Wills. At the last meeting in which they met with Clarkson at his office, Lorene and Robert expressed reservations about their inability to change their wills.

\*    \*    \*    \*    \*    \*

33. Clarkson did not advise Lorene to seek independent legal counsel before Lorene executed her 1982 Will or any other wills prepared by Clarkson. Clarkson was an experienced attorney, having been in private practice for more than thirty (30) years, and at one time had been honored as Trial Lawyer of the Year.

34. At the time of the preparation of the 1982 Will, Lorene had not orally discussed her will with Clarkson.

35. With respect to the 1982 Wills, Clarkson had prepared and mailed the unexecuted wills to Robert and Lorene.... Clarkson testified that it was his custom and practice not to sit down with Robert and Lorene and discuss the legal consequences of the execution of the wills and "saw no reason to do it."

Record, pp. 209–14.

▆▆▆ The purpose of making special findings is to provide the parties and reviewing courts with the theory upon which the judge decided the case so that the right of review for error might be effectively preserved. *Willett v. Clark* (1989), Ind.App., 542 N.E.2d 1354, 1357. When the trial court enters special findings pursuant to Trial Rule 52, we apply a two-tier standard of review. *W & W Equipment Co. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 569, *reh'g denied, trans. denied.*

▆▆▆ First, we consider whether the evidence supports the findings. Special findings will be set aside only if they are clearly erroneous. *Citizens Progress Co. v. James O. Held & Co.* (1982), Ind.App., 438 N.E.2d 1016, 1022. In determining whether findings are clearly erroneous, the court construes the findings liberally in support of the judgment. *Id.* Only when a review of the record leaves us firmly convinced a mistake has been made

are the findings clearly erroneous. *Cooper v. Calandro* (1991), Ind.App., 581 N.E.2d 443, 444–45, *reh'g denied, trans. denied.*

After we conclude that the evidence supports the findings, we determine whether the findings support the judgment. A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *reh'g denied, trans. denied.* In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. *Estate of Banko* (1993), Ind., 622 N.E.2d 476, 481, *reh'g denied.* Instead, we consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. *Id.*

I

The first issue the appellants raise for our review is whether the trial court properly determined the 1982 will did not create an irrevocable contract. In its conclusions of law the trial court stated:

"3. A joint or mutual will, unless accompanied by an expressed or implied contract not to revoke, may be revoked at pleasure.

\*    \*    \*    \*    \*    \*

6. The guidelines to determine whether a joint or mutual will should be considered revocable are:

a. the testators agree that the disposition cannot be revoked by one without the consent of the other;

b. the agreement must appear either in the provisions of the joint will itself, or some reference must be made in the will, or evidence of such agreement must be produced at hearing;

c. the joint will must include the mutuality of promises or reciprocal consideration therefore;

d. the intent of the testors [sic] to merge both estates into one corpus; and

e. the limitation on the use of the property by the surviving spouse.

*Wisler v. McCormack* (1980), Ind.App., 406 N.E.2d 361, 363–364.

7. The 1982 Will is not a valid joint and mutual will since it did not provide for the liquidation of Lorene's or Robert's assets nor for the joinder of these assets into one corpus. The 1982 Will further did not place limitations on the use of the property by Lorene during her lifetime."

Record, p. 217–218.

The appellants contend that the trial court failed to distinguish between joint wills and mutual wills when determining whether the 1982 will created an irrevocable contract. As a result, the appellants claim the trial court mistakenly applied case law concerning joint wills to the 1982 will which was a mutual will. We disagree with the appellants analysis of this issue, but we hold, for different reasons, that the 1982 will created an irrevocable contract.

The appellants assert that the issue of revocability is dependant upon whether the 1982 will was a joint will or a mutual will. "A joint will is a single testamentary instrument that embodies the testamentary plan of two or more persons and is separately executed by each of the testators using the instrument." *Moore v. Harvey* (1980), Ind. App., 406 N.E.2d 354, 358. In contrast, mutual wills are separate wills of two people which are reciprocal in their provisions. Black's Law Dictionary 1021 (6th ed. 1990); 29 I.L.E. *Wills* § 1 (1960).

Contrary to appellants' contention, the revocability of a will depends not upon whether it is a joint will or a mutual will, but whether there is a contractual obligation imposed on the testator not to revoke the will. Such an agreement may be shown by the terms of the will itself or by other evidence establishing the contractual obligation. *See Kitchen v. Estate of Blue* (1986), Ind.App., 498 N.E.2d 41, 44; *Cramer v. Echelbarger* (1968), 142 Ind.App. 374, 378, 234 N.E.2d 864, 866.

The trial court erred when it misinterpreted the holding in *Wisler v. McCormack* (1980), Ind.App., 406 N.E.2d 361. The trial court determined the contract created by the

1982 mutual will was revocable based on the five guidelines set out in *Wisler*. In that case, the language of the joint will did not reveal an express contract that the will was irrevocable. *Id.* at 363. Because the court found no express statement that the will was intended to be irrevocable, it looked to the provisions of the will as a whole to determine if a contract of irrevocability was intended. *Id.* at 363–64. It did so using the guidelines applied by the trial court here. *Id.*

In the present case, the trial court's findings of fact indicate that Lorene's and Robert's 1982 wills "contained language of an irrevocable contract." Record, p. 213. Lorene's 1982 will provided as follows:

"My beloved husband, Robert N. Whitaker, has executed a will identical to this will, as much as possible, on the same date as I have executed this will, and this will is executed in consideration for the mutual will of my beloved husband, Robert N. Whitaker, and does constitute an irrevocable contract with him."

Record, p. 1159. Robert's will included a similar provision.

Lorene's 1982 will was irrevocable because the express language of the will so stated. The trial court arrived at an erroneous conclusion that the mutual will did not create an irrevocable contract when it went on to apply the five guidelines set out in *Wisler* as necessary factors. Therefore, we conclude the trial court erred in determining the 1982 will did not create an irrevocable contract.

## II

■ The second issue Appellants raise for our review is whether the trial court properly held the 1982 will was void for undue influence and fraud. *See* Ind.Code § 29–1–7–17. In determining whether a special finding supports a judgment, we only consider the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. *Estate of Banko*, 622 N.E.2d at 481. We find there is sufficient evidence to support the trial court's ruling that the 1982 will is void.

■ First, Clarkson drafted the 1982 will and was a beneficiary under that will. When

an attorney drafts a will that includes a bequest or provides a benefit to the attorney or one of his family members, the will is presumed to be void for undue influence or fraud. *See In the Matter of Smith* (1991), Ind., 572 N.E.2d 1280, 1286. To overcome this burden, the attorney must prove the transaction was fair. *Lucas v. Frazee* (1984), Ind.App., 471 N.E.2d 1163, 1167. He must then rebut the presumption of undue influence and fraud by clear and unequivocal proof. *Id.*

■ Second, Clarkson failed to inform Lorene of the legal consequences of her will. By operation of law, a fiduciary relationship exists between an attorney and his client. *Id.* at 1166. The law presumes fraud when a person with a fiduciary duty benefits from a questioned transaction. *See Id.* at 1167. Since Clarkson had a fiduciary relationship with Lorene and benefitted from drafting her will, this conduct tends to show constructive fraud. *See generally Pugh's IGA, Inc. v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194 *reh'g denied, trans. denied.*

The appellants point to evidence which they contend proves there was no undue influence or fraud. The appellants in effect ask that we reweigh the evidence and conclude that the trial court's judgment was clearly erroneous. We cannot do so. *See Estate of Banko*, 622 N.E.2d at 481. We may only consider the evidence that supports the trial court's judgment and the reasonable inferences to be drawn from the evidence. *Id.* We find there is sufficient evidence to support the trial court's judgment that the 1982 will is void for undue influence and fraud.

For the forgoing reasons, we hold that the trial court erred when it determined the 1982 will did not create an irrevocable contract. Notwithstanding this error, we will not disturb the trial court's judgment that the 1982 will is void for undue influence and fraud.

AFFIRMED.

FRIEDLANDER and HOFFMAN, JJ., concur.