In re the ESTATE OF Harry
L. RICKERT,

Carole Baker, Personal Representative
of the Estate of Harry L. Rickert,
Deceased, Appellant,

v.

Keta Taylor, Appellee.

No. 18A04–0812–CV–746.

Court of Appeals of Indiana.

Sept. 8, 2009.

P. Gregory Cross, The Cross Law Firm, P.C., Muncie, IN, Sara E. Shade, Beasley Gilkison, LLP, Muncie, IN, Attorneys for Appellant.

Stan G. Wyrick, Muncie, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Carole Baker, as personal representative of the Estate of Harry Rickert, appeals the trial court's judgment awarding ownership of certain joint accounts to Keta Taylor. She argues the trial court incorrectly presumed Taylor was entitled to funds in joint accounts that had been in Taylor and Rickert's names.[1] We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Rickert's wife died in 1991. Taylor was providing household services and helping to care for Rickert's wife before her death. Afterwards, Taylor continued working for Rickert, helping take care of him and the household. She did so until Rickert's death in May 2006 at the age of ninety-three.

In 1992, Rickert executed a will that made certain specific bequests and divided the rest of his estate among five persons: Baker, and four nieces and nephews. In 1997, Rickert executed a codicil that added Taylor as a sixth residuary beneficiary. In 1999, Rickert executed a second codicil that named Baker as personal representative of his estate. When Rickert executed the second codicil, he told Baker he had about $600,000 in his estate and each beneficiary would receive approximately $100,000.

On April 22, 1997, Rickert executed a power of attorney naming Taylor his attorney-in-fact. Beginning in 2001, Taylor used her power of attorney to open fifteen certificates of deposit in Rickert's name, with herself as joint owner or payable on death ("POD") beneficiary of the accounts. Rickert signed paperwork related to only two of these accounts. The evidence presented at trial indicates most, if not all, of the accounts were established after Rickert had become incompetent. There was testimony Rickert could not make decisions for himself in the five to six years before he died. Rickert died in May of 2006, and the accounts were opened between June of 2001 and February 2006.[2] When Rickert die d, the thirteen accounts opened by Taylor alone were worth $271,019.71; his probate estate assets were valued at $147,125.64.[3]

At Baker's request, the trial court appointed a special personal representative to investigate whether any of these joint accounts should be considered property of the Estate. On November 13, 2007, the special personal representative recommended that the thirteen accounts opened by Taylor alone, without Rickert's direct involvement or signature on the account documents, be considered property of the Estate. The trial court rejected the recommendation and concluded the accounts presumptively belonged to Taylor, unless the Estate could establish clear and convincing evidence "of a different intention" on Rickert's part when the accounts were

1. Because the presumption should not have been applied under the facts of the case before us, we need not address whether the Estate rebutted the presumption Taylor was entitled to the funds.

2. In her Statement of the Facts, Taylor notes there is no evidence in the record that Rickert "was declared incompetent by a physician or the court," and the Estate's witnesses could not "definitely" say when Rickert became un-

able to make his own decisions. (Br. of Appellee at 4.) But Taylor does not direct us to anything in the record that suggests Rickert was in fact competent to open the accounts or to form any intent as to their disposition at his death.

3. There were a few other joint accounts benefitting persons other than Taylor. They are not at issue in this appeal.

created. (Appellant's App. at 182.) After conducting hearings, the trial court ruled the Estate had not rebutted the presumption that Taylor was entitled to the accounts.

### 1. *Presumption of Survivorship Rights*

■ The trial court erred in presuming Taylor was the rightful owner of the multiple joint accounts she opened and requiring the Estate to rebut the presumption. This ruling was one of law because the facts underlying it are not disputed: Taylor opened the accounts using Rickert's funds but without Rickert's direct involvement, and she named herself as either as POD beneficiary or joint account owner. Where the facts relevant to an issue are undisputed and an appeal presents only questions of law, our review is *de novo. Tippecanoe County v. Indiana Mfrs. Ass'n,* 784 N.E.2d 463, 465 (Ind.2003).

■ Resolution of this issue turns on Ind.Code § 32–17–11–18(a), which states: "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent *unless there is clear and convincing evidence of a different intention* at the time the account is created." (Emphasis supplied.) As it appears Rickert could not, when the accounts were created, have had any "intention" regarding the ownership of the accounts at his death, the statutory presumption of rights of survivorship in the joint account owner or POD beneficiary should not apply. Rickert was apparently unaware the accounts were being opened and apparently incompetent to form any intention they benefit Taylor.

We hold that where, as here, an account is established by an attorney-in-fact using entirely the funds of a principal, the attorney-in-fact is named joint owner or POD beneficiary, and the principal has no direct involvement in, or even awareness of, the creation of the account, the survivor cannot be presumed the owner of the accounts.

■ This is precisely the type of situation that, under the common law, would have raised a red flag of constructive fraud. "Constructive fraud arises by operation of law from a course of conduct, which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud." *Strong v. Jackson,* 777 N.E.2d 1141, 1146 (Ind.Ct. App.2002), *aff'd on reh'g, trans. denied* 792 N.E.2d 44 (Ind.2003). "The law presumes fraud when a person with a fiduciary duty benefits from a questioned transaction." *Clarkson v. Whitaker,* 657 N.E.2d 139, 144 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* If there is a fiduciary relationship and the questioned transaction between the two parties results in an advantage to the dominant party in whom the subordinate party had reposed his or her trust and confidence, the dominant party in the relationship bears the burden to rebut, by clear and unequivocal proof, the presumption of fraud. *In re Estate of Wade,* 768 N.E.2d 957, 961–62 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 697 (Ind.2002). The relationship between an attorney-in-fact and his or her principal is a fiduciary one. *Strong,* 777 N.E.2d at 1148.

Our Supreme Court noted in *In re Estate of Banko,* 622 N.E.2d 476, 480 (Ind. 1993), *reh'g denied,* that under the Non–Probate Transfer Act[4] ("NPTA"), there is a statutory presumption in favor of the surviving joint account holder, regardless of the relationship between the decedent

4. There, our Supreme Court addressed Ind. Code § 32–4–1.5–4(a), which was the identically-worded predecessor to the current section, Ind.Code § 32–17–11–18(a).

and the survivor. This statutory presumption requires that a party challenging the survivor's right to the joint account proceeds establish that the decedent did not intend for the survivor to receive the funds. *Id.*

The Court addressed the interplay among the statute, the common law of constructive fraud, and presumptions of undue influence arising from certain relationships:

> [A]t common law a presumption of undue influence arose upon transactions between parties with certain relationships and, as a result of the presumption, the burden of proof shifted to the spouse who benefitted from the transaction to establish the integrity of the transaction. In contrast, under the NPTA statutory scheme, a presumption arises in favor of the survivor, regardless of the relationship between the decedent and the survivor. This statutory presumption requires that a party challenging the survivor's right to the joint account proceeds establish that the decedent did not intend for the survivor to receive the funds. Consequently, the common law presumption of undue influence contradicts the statutory presumption of survivorship because the presumption of undue influence shifted the burden of proof to the survivor of a joint account and this shift in the burden of proof is not contemplated by the statutory scheme.
>
> The legislative enactment of the survivorship presumption by unmistakable

implication replaces the common law presumption of undue influence. It follows that the common law presumption of undue influence arising between parties with certain relationships no longer exists under the NPTA. We hold that Ind.Code § 32–4–1.5–4(a) creates the presumption that a survivor to a joint account is the intended receiver of the proceeds in the account. In order to defeat this presumption, a party challenging the survivor's right to the proceeds must present clear and convincing evidence that the decedent at the account's creation did not intend the joint tenant to receive the proceeds or that the intent of the decedent changed before death and the decedent by written order informed the financial institution of this change.

*Id.* at 480.

*Banko* does not require application of NPTA statutory presumption in favor of Taylor as POD beneficiary or joint account holder under the facts of this case. The *Banko* Court explicitly stated the presumption is premised on the "underlying assumption . . . that most persons who use joint accounts *want the survivor or survivors to have all balances remaining* at death." 622 N.E.2d at 480 (citing commentary by the Indiana Probate Code Study Commission) (emphasis supplied). The statutory presumption therefore cannot properly be applied where a testator is unaware the accounts are being opened and/or incompetent to form the requisite intent that they benefit the survivor.[5] As

---

5. We do not suggest Taylor acted improperly. But it is apparent that application of the statutory presumption in a situation like this, where a decedent joint account holder could not have had "intent" regarding the survivor, could (and presumably often would) permit an unscrupulous attorney-in-fact to plunder an incompetent's estate without any consequences. The legislature could not have in-

tended for the statutory presumption to apply in such a situation so as to permit that result.

The dissent would require us to follow *Banko* because our Supreme Court applied the statutory presumption to "similar facts" there. Those facts do not require application of the statutory presumption in the case before us.

it appears Rickert could not have had any "intent" regarding the ownership of the accounts, it was error to apply the presumption and require the Estate to rebut it. We do not believe the broad holding in *Banko* eliminated the common law of constructive fraud and undue influence in a case like the one before us, where could be no "intent" on which the statutory presumption must be based.

In *Reiss v. Reiss*, 500 N.E.2d 1223, 1228 (Ind.Ct.App.1986), *reh'g denied, vacated* 516 N.E.2d 7 (Ind.1987),[6] we noted only one jurisdiction had "clearly determined the effect of the statutory presumption of the joint tenant's ownership on the presumption of undue influence." In *In re Estate of Mehus*, 278 N.W.2d 625 (N.D. 1979), the North Dakota Supreme Court held the estate, and not the joint account-holder, owned joint bank accounts despite a statute identical to ours. The *Mehus* court said:

> Even if we assume [the statute] creates a presumption in favor of a surviving joint tenant, that statute presumes a validly created joint account in the first instance. However, in this case, the ac-

Ind.Code § 32-4-1.5-4(a) applies to "[s]ums remaining on deposit at the death *of a party to a joint account* ...." The dissent notes evidence in our *Banko* decision that there had been a transfer of stock a few weeks before Banko's death, when Banko was not able to understand what he was doing and could not sign his name. "This evidence did not persuade our supreme court that the appellant had unmistakably rebutted the statutory presumption of survivorship." (Dissent at 840.)

But that was not a transfer to which the statutory presumption of survivorship could have applied, as it does not appear that the stock transfer we noted in *Banko* was in any way connected with a joint bank account with rights of survivorship. We did not treat it as such, but instead noted "At least with respect to the transfer of Ratheon [sic] stock and the stocks specifically traceable to the estate of Banko's second wife, transfers which occurred immediately before Banko's death, at a time when he could neither consent nor sign his name, Rogers [Banko's daughter, who tried to reopen his estate] has established a *prima facie* case of constructive fraud which the personal representative had a duty to thoroughly investigate." *In re Estate of Banko*, 602 N.E.2d 1024, 1029–30 (Ind.Ct.App. 1992), *reh'g denied, vacated* 622 N.E.2d 476 (Ind.1993).

Our Supreme Court's *Banko* opinion did not explicitly mention the stock transfer on which the dissent relies, but instead refers only to "joint accounts":

> The Bank, as personal representative, timely filed the inventory of probate assets with the probate court on July 17, 1990.

This inventory did not include any joint accounts, although in fact, joint accounts existed between Banko and Nadine. Rogers admits receiving the inventory. On August 23, 1990, the Bank filed a petition to determine inheritance tax, which included a schedule of all property owned by Banko. Although the schedule did not individually list the joint accounts, it did refer to accounts "jointly held with surviving spouse" on the appropriate schedule.

622 N.E.2d at 477.

The dissent is correct that there was evidence in *Banko* of a transfer with regard to which the testator could not have formed any intent. But that transfer did not involve a joint account, so the Supreme Court's *Banko* decision does not require application of the statutory presumption in the case before us.

6. In *Reiss*, this court held the statutory burden of proof should not have been placed on the Estate because there was a confidential relationship between the joint account holders, and the surviving joint account holder benefited from it. 500 N.E.2d at 1228. Our Supreme Court disagreed, determining the statutory presumption applied because, "[a]fter weighing the conflicting evidence, the trial court concluded that Himelick created the accounts *on her own will* and that no undue influence had been proven." 516 N.E.2d at 9 (emphasis supplied). It also noted that in certain relationships, the law raises a presumption of influence upon the subordinate party by the dominant party, but when the parties are siblings, as they were in *Reiss*, the law does not raise such a presumption. *Id.* at 8.

count was invalidly created through the violation of a fiduciary duty, the presumption never arises and consequently has no effect.

*Id.* at 634.

Nor did the presumption arise in the case before us. The *Mehus* reasoning and result is not inconsistent with our Supreme Court's holding in *Reiss*, because in *Reiss* the person who created the joint accounts did so "on her own will"; it was therefore appropriate to apply the statutory presumption to carry out that intent. *Mehus* offers the correct approach to situations like that before us, where, unlike in *Reiss*, a fiduciary relationship existed and the "intent" on which our statutory presumption is premised apparently could not have existed.

No presumption Taylor was an "intended receiver" arose because Rickert was incompetent when the joint accounts were established or unaware they were being established. We accordingly reverse and remand so the trial court may do additional factfinding, if necessary, applying the common-law presumption against Taylor.

### 2. *Exclusion of Taylor's Testimony*

Taylor's counsel called her to testify, and the Estate objected to any testimony about "anything that happened while Mr. Rickert was alive because that's within the parameters of the Dead Man's Statute...." (Tr. at 91.) The trial court excluded her testimony "that pertains to the things that deal with the accounts and surrounding the accounts and the handling of them." (*Id.* at 96.)

█ The Dead Man's Statute addresses the competence of a witness, not the competence of that witness's testimony. *Estate of Hann v. Hann,* 614 N.E.2d 973, 977 (Ind.Ct.App.1993). A ruling on witness competency will not be reversed absent a clear abuse of discretion. *Kalwitz v. Estates of Kalwitz,* 759 N.E.2d 228, 232 (Ind. Ct.App.2001), *reh'g denied, trans. denied* 774 N.E.2d 519 (Ind.2002). An abuse of discretion will be found when the ruling is against the logic and effect of the facts and circumstances before the trial court. *Id.* The trial court did not abuse its discretion.

Ind.Code § 34–45–2–4, the Dead Man's Statute, applies to proceedings

    (1) in which an executor or administrator is a party;

    (2) involving matters that occurred during the lifetime of the decedent; and

    (3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.

A person who is a necessary party to the issue or record and whose interest is adverse to the estate is not a competent witness as to matters against the estate, unless a deposition of the decedent was taken or the decedent has previously testified as to the matter and the decedents testimony or deposition can be used as evidence for the executor or administrator. *Id.*

█ The general purpose of the statute is to protect decedents' estates from spurious claims. *J.M. Corp. v. Roberson,* 749 N.E.2d 567, 571 (Ind.Ct.App.2001). Generally, when an executor or administrator of an estate is one party, the adverse parties are not competent to testify about transactions that took place during the lifetime of the decedent. *Id.* The Dead Man's Statute "guard[s] against false testimony by a survivor by establishing a rule of mutuality, wherein the lips of the surviving party are closed by law when the lips of the other party are closed by death." *Id.*

Taylor does not dispute that she would be an incompetent witness under the stat-

ute, but argues the Estate waived the incompetency because it filed her deposition with the trial court. It did not.

The mere taking of a deposition does not waive the applicability of the Dead Man's Statute. *Id.* But when a party "uses a deposition or admissions in court, the party is in fact using the information for an evidentiary purpose." *Id.* If the deposition testimony concerns matters within the scope of the Dead Man's Statute, then the party who offered the deposition testimony into evidence has waived the incompetency of the witness, because that party has relinquished the benefit bestowed by the statutes. *Id.*

Taylor does not explain how, merely by filing it with the court, the Estate "used" the deposition in court for an "evidentiary purpose." She asserts, without explanation or citation to authority, "[t]here was no limitation as to the use of the deposition," so on its filing "it became part of the record for evidentiary purposes." (Br. of Appellee at 12.)

We decline Taylor's invitation to hold the Estate's "filing" of her deposition, without more, established the deposition was "used" at trial for an "evidentiary purpose." The filing of a deposition amounts to its "publication," Ind. Trial Rule 5(E)(5). Publication of a deposition is required in order to place the deposition before the court. Until the deposition is published, by order of the court on a motion by either party, the deposition cannot be taken into account by the court in ruling on any motions of the parties. *Augustine v. First Federal Sav. and Loan Ass'n of Gary,* 270 Ind. 238, 241, 384 N.E.2d 1018, 1020 (1979).

The reason for requiring publication is that when a deposition is taken, a party need not object to questions on the basis of inadmissibility. T.R. 32(B) permits a party to wait and object at trial or a hearing when the deposition is read into evidence or otherwise used. *Id.* "Were we to dispense with the publication requirement, the very essence of T.R. 32(B) could not be implemented. Trial judges could examine depositions at will without regard to the possibility that they might contain objectionable matter." *Id.* at 241–42, 384 N.E.2d at 1020. The Estate's filing of Taylor's deposition accordingly might have had the effect of making it *available* for use at trial for an evidentiary purpose. But the filing, without more, does not equate to such "use." Taylor's testimony was properly excluded pursuant to the Dead Man's Statute.

## CONCLUSION

The trial court erred in concluding Taylor was presumptively entitled to survivorship rights in the challenged accounts she created and in requiring the Estate to rebut that presumption by clear and convincing evidence. Taylor's proffered testimony was properly excluded. We accordingly reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAKER, C.J., concurs.

BARNES, J., dissenting with separate opinion.

BARNES, Judge, dissenting.

I respectfully dissent. At the outset, however, I wish to emphasize that I am highly sympathetic to the result reached by the majority. If we were writing on a blank slate I would agree with that result. We are not writing on a blank slate. As an intermediate appellate court, we must follow precedent set by our supreme court, even if we do not agree with it. *See Horn v. Hendrickson,* 824 N.E.2d 690, 694–95 (Ind.Ct.App.2005). That said, I simply am

convinced that our supreme court's *Banko* decision is binding precedent we must follow.

*Banko* unequivocally states, "The legislative enactment of the survivorship presumption by unmistakable implication replaces the common law presumption of undue influence.... We hold that [the NPTA] creates the presumption that a survivor to a joint account is the intended receiver of the proceeds in the account." *Banko,* 622 N.E.2d at 480. Our supreme court did not state any exceptions to this rule. *Banko* clearly holds that the NPTA abolished the common law of constructive fraud and undue influence for any accounts falling under the statute. Moreover, *Banko* was decided sixteen years ago, and aside from recodifying the statute our legislature has not seen fit to alter any of the applicable language of the NPTA. "[I]t is well-established that a judicial interpretation of a statute, particularly by the Indiana Supreme Court, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation." *Fraley v. Minger,* 829 N.E.2d 476, 492 (Ind.2005).

To the extent the majority asserts that there was essentially undisputed evidence that Rickert was incompetent at the time most of the accounts at issue were opened, and that this means the statutory presumption of survivorship under the NPTA does not apply, I cannot agree. First, I believe that any evidence of Rickert's incompetency would be relevant to rebutting the NPTA presumption of survivorship, and therefore the Estate bore the burden of establishing such incompetency; Taylor did not have to prove competency. I do not think the evidence regarding Rickert's incompetency is as conclusive as the majority suggests. Rickert never was legally

declared incompetent, and the Estate presented no expert testimony that he ever met that definition. There was testimony from Baker and two of Rickert's nephews that they believed he began to "decline" mentally beginning in about 2000, and that eventually (although they could not say precisely when) they believed he was unable to make decisions for himself. Tr. p. 34. The trial court was not required to accept this imprecise lay testimony regarding Rickert's competency. *See Thompson v. State,* 804 N.E.2d 1146, 1149 (Ind.2004) (noting that factfinders may choose not to accept even uncontradicted testimony). Moreover, there was testimony from a bank employee, who had interacted with Rickert and Taylor sometime around 2002 or before, that she believed Rickert was coherent, not confused, and able to understand his financial dealings.

Second, and much more importantly, even if I were to assume that there was conclusive, undisputed evidence that Rickert was incompetent when some or most of these accounts were opened, there were similar facts in *Banko,* and still our supreme court applied the NPTA statutory presumption of survivorship. *Banko* rejected the appellant's contention that it had rebutted the statutory presumption of survivorship rights; the opinion contains no recitation of the facts or evidence that led it to that rejection. I observe, however, that the opinion by this court in the matter indicated that there was virtually undisputed evidence that at the time of at least some of the disputed transactions, the person whose estate was challenging the transactions was near death and incapable of consenting or signing his name to those transactions. *See In re Estate of Banko,* 602 N.E.2d 1024, 1029–30 (Ind.Ct. App.1992). Specifically, "$71,000 of Ratheon stock had been transferred only a few weeks before Banko's death, at a time when Banko not only was incapable of

understanding what he was doing but was unable to write his own name." *Id.* at 1027. This evidence did not persuade our supreme court that the appellant had unmistakably rebutted the statutory presumption of survivorship. *See Banko,* 622 N.E.2d at 481. If our supreme court in *Banko* was not persuaded to reverse a trial court's judgment that a joint account survivor was entitled to the account, even where there was clear evidence the decedent was incapacitated when some of the transactions occurred, I conclude we should not reverse the trial court's judgment in this case, where the evidence is less clear regarding Rickert's incapacity or when it might have occurred in relation to when the joint accounts were opened.

I am keenly aware that an unscrupulous caregiver, armed with a power of attorney, could finagle joint tenancy accounts in a way that results in a gross injustice. Under *Banko*'s interpretation of the NPTA, however, courts essentially must presume that a joint tenancy account was scrupulously created, no matter who created it and regardless of whether one person to the account was even aware of its creation. I would urge our supreme court to reconsider *Banko*'s breadth, or alternatively urge the General Assembly to enact legislation that would exempt situations such as the one in this case from the NPTA's application. Unless and until that happens, however, we must apply the NPTA as *Banko* interpreted it. Under that interpretation, I believe we have no choice but to affirm the judgment of the trial court.