**HENDRICKS COUNTY BANK & TRUST COMPANY, Appellant–Defendant,**

v.

**GUTHRIE BUILDING MATERIALS, INC., Appellee–Plaintiff.**

**No. 32A01–9510–CV–332.**

Court of Appeals of Indiana.

April 16, 1996.

Rehearing Denied June 17, 1996.

---

Philip L. Gundlach, Hinkle Keck & Hinkle, Danville, for Appellant.

Kurt F. Pantzer, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In this appeal we are asked to construe provisions of the Indiana Depository Financial Institutions Adverse Claims Act ("Adverse Claims Act") codified at Indiana Code § 28–9–1–1 *et seq.* Hendricks County Bank and Trust Company (the "Bank") appeals from the trial court's grant of summary judgment in favor of Guthrie Building Materials, Inc. ("Guthrie"). Following a hearing on the parties' cross-motions for summary judgment, the trial court entered judgment against the Bank in the amount of $12,785.18.

We reverse.

## ISSUES

The Bank presents three issues for our review which we consolidate and restate as two dispositive issues:

1. Whether an electronic facsimile transmission ("FAX") constitutes service of notice of an adverse claim by a non-judgment creditor sufficient to render the depository financial institution accountable for funds claimed by the creditor.

2. Whether Guthrie failed to perfect the preliminary notice of its adverse claim.

## FACTS

Leslie Builders I.G.I, Ltd. ("Leslie") maintained a depository account at the Bank. At the close of business on January 25, 1995, the account had a balance of $13,204.80. On January 26, 1995, Guthrie sent a copy of its "Notice of Adverse Claim and Affidavit in Support of Adverse Claim" to the Bank via FAX. That same day, the Bank paid four checks written on Leslie's account totaling $2,966.81. On January 27, 1995, Leslie withdrew $9,485.14 from the account, and on January 30, the Bank paid checks totaling $758.13. Then, on January 31, $2,000.00 was deposited and the Bank paid three checks in the amount of $1,635.30.

On January 30, 1995, Guthrie filed its complaint on accounts stated and for fraud and conversion against Leslie. Guthrie also filed a motion for prejudgment garnishment of any deposit account of Leslie's maintained with the Bank. The trial court approved a bond and signed its prejudgment garnishment order on January 30. That order directed the Bank to appear in the action as a garnishee defendant and to furnish the court with a description of any property belonging to Leslie and held by the Bank. The Bank was not served with the summons and garnishment order until February 2, 1995. The garnishee's statement then filed by the Bank revealed that on February 3, 1995, Leslie's account balance was $15.94.

Following the trial court's denial of the Bank's motion to dismiss and motion to quash the prejudgment garnishment, the parties filed cross-motions for summary judgment, each asserting that it was entitled to judgment as a matter of law under the Adverse Claims Act. After a hearing, the trial court entered summary judgment in favor of Guthrie and concluded that Guthrie had an equitable lien against the Bank in the amount of $12,237.99, plus prejudgment interest of $547.19, for funds wrongfully paid by the Bank from Leslie's account. The Bank now appeals.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing motions for summary judgment, we apply the same standard applicable in the trial court. *Gilliam v. Contractors United, Inc.*, 648 N.E.2d 1236, 1238 (Ind.Ct.App.1995), *trans. denied.* Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). All facts and inferences must be liberally construed in favor of the party opposing the motion for summary judgment. *Haas Carriage, Inc. v. Berna*, 651 N.E.2d 284, 287 (Ind.Ct.App. 1995).

The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Laudig v. Marion County Bd. of Voters Registration*, 585 N.E.2d 700, 704 (Ind.Ct.App.1992). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

### Statutory Construction

In construing a statute, our primary task is to determine and give effect to the intent of the legislature. *Ashlin Transp. Serv. v. Indiana Unemployment*, 637 N.E.2d 162, 166 (Ind.Ct.App.1994). When a statute is clear and unambiguous on its face, this court may not interpret the statute. *Id.* Rather, we look to the plain and ordinary meaning of the words and phrases in a statute to discern the legislative intent, although technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical im-

port. *Id.; see* IND.CODE § 1–1–4–1(1). Further, we presume the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Ashlin,* 637 N.E.2d at 166. As a reviewing court, we must examine both the grammatical structure of the clause or sentence in issue and the structure of the statute as a whole. *Greyhound Financial Corp. v. R.L.C., Inc.,* 637 N.E.2d 1325, 1327 (Ind.Ct.App.1994).

### Adverse Claims Act

 We first consider the underlying purpose of the Adverse Claims Act. This court has stated that the purpose of the Act is to protect banks and other financial institutions from double liability in situations where a creditor seeks to obtain the funds of a bank's depositor. *McClure Oil Corp. v. Whiteford Truck Lines,* 627 N.E.2d 1323, 1325 (Ind.Ct.App.1994); *First Bank v. Samocki Bros. Trucking Co.,* 509 N.E.2d 187, 194 (Ind.Ct.App.1987), *trans. denied.* Because the relationship between a bank and its depositor is one of a debtor and creditor, the Act protects the bank from claims of its depositor that could arise if the bank, in compliance with the Act, fails to follow its depositor's instructions. *McClure Oil,* 627 N.E.2d at 1325.

 Generally, the Act provides that upon service of notice of an adverse claim in accordance with the Act, the bank is obligated to freeze the depositor's account until all parties' respective rights to the account can be determined. *See Samocki,* 509 N.E.2d at 194 (citing Indiana Code § 28–1–20–1.1, repealed and recodified as Indiana Code § 28–9–1). Considering the predecessor to the current Adverse Claims Act, in *Samocki* we emphasized the importance of the claimant's compliance with the specific procedural requirements of the Act and stated that "an adverse claimant's failure to abide by the provisions of an adverse claim statute leaves a financial institution with no recourse but to honor its depositor's demands." *Id.* at 195.

1. Although Guthrie asserts that the Bank failed to raise this issue in the trial court, we conclude that the issue of the adequacy of service by FAX was properly before the court on summary judg-

### Issue One: Notice of Adverse Claim

 The record shows that Guthrie sent written verified notice of its adverse claim against Leslie to the Bank via FAX. The Bank contends that a FAX does not constitute sufficient service of notice under the Adverse Claims Act to render the Bank liable to Guthrie.[1] We agree.

Indiana Code § 28–9–3–3 provides in pertinent part:

(b) A depository financial institution may not be held accountable to an adverse claimant for funds in a deposit account that are claimed by the adverse claimant unless the adverse claimant:

(1) *serves* on the depository financial institution written verified notice of the adverse claim stating in detail:

(A) the nature of the adverse claim, including the facts from which the adverse claim arose;

(B) that an action has been instituted in a court having jurisdiction in Indiana, or will be instituted within three (3) working days after receipt by the depository financial institution of the notice; and

(C) that the action instituted will include all persons known by the adverse claimant to have a claim against or an interest in the deposit account. . . .

(emphasis added). We must consider the meaning of "serves" as that term is used in Section 3(b)(1) in order to determine whether Guthrie's action of sending written verified notice via FAX was sufficient service of notice to have placed a duty on the Bank to restrict the withdrawal of funds from Leslie's account.

 Despite Guthrie's argument to the contrary, we decline to differentiate between the verb "serves" and its corresponding noun "service," as both have the same peculiar and appropriate meaning in law. *See* IND. CODE § 1–1–4–1(1). The term "service" has been defined as "the exhibition or delivery of a writ, summons . . . notice, order, . . .

ment. A properly designated issue before the trial court was "whether Guthrie complied with the Depository Financial Institutions Adverse Claims Act. . . ." Record at 322.

to a person who is thereby officially notified of some action or proceeding in which he is concerned, and is thereby advised or warned of some action or step which he is commanded to take or to forbear." *Black's Law Dictionary* 1368 (6th ed. rev. 1990). Specifically, our supreme court has stated that "service of notice" has a definite meaning, and unless otherwise provided by law means "personal service of the individual in such a way that the party who makes service may be in a position to make due proof thereof to the court." *Lock Joint Tube Co. v. Citizens Trust and Sav. Bank of South Bend*, 218 Ind. 162, 170, 31 N.E.2d 989, 993 (1941); *see also Leons v. Bloemker*, 649 N.E.2d 1041, 1043 (Ind.Ct.App.1995); *Bayes v. Isenberg*, 429 N.E.2d 654, 659 (Ind.Ct.App.1981).

■ It is inherent in the concept of "service" that service of notice upon a person or entity imposes legal obligations and consequences that make the manner and proof of such notice of utmost importance. Indeed, proper service of the notice prescribed by statute is a prerequisite to a bank's accountability to an adverse claimant for funds in a deposit account. *See* IND.CODE § 28–9–3–3; *Samocki*, 509 N.E.2d at 194. Thus, when construed within the context of the Adverse Claims Act and its underlying policy to protect banks from the risk of inconsistent claims of liability, the term "serves" means legally sufficient service of notice upon which a due return of service can be made. An adverse claimant sending notice via FAX cannot provide the court with proof that notice was actually delivered to a person authorized to accept service.

■ Guthrie incorrectly asserts that the manner of notice is irrelevant, provided that the Bank was apprised of the adverse claim. A financial institution is placed in a difficult position when a third party asserts an adverse claim against the account of its depositor, and we must construe the notice provision in the statute in conformity with the legislature's intent to protect financial institutions from such conflicting claims. The Bank's actual knowledge of the claim is not a substitute for the official notice required by the statute.

We do not dispute Guthrie's argument that the construction of "serves" to include delivery of notice via FAX would afford a flexible and expedient method to transmit notice of adverse claims. Both our trial and appellate rules have recognized the modern convenience and widespread use of FAX machines. However, it is only after service of process has been accomplished in a suit that attorneys may consent to or request subsequent service by FAX, and file pleadings, motions and other papers with the court by FAX. *See* Ind.Trial Rule 3.1, 5(E); Ind.Appellate Rule 12(F).

In this case, until our legislature provides for service of notice of an adverse claim by FAX, we decline to approve an electronic facsimile transmission as a valid means of service under the Adverse Claims Act. We hold that in sending notice of its adverse claim via FAX, Guthrie did not serve notice sufficient under the Act to render the Bank accountable to Guthrie for the funds claimed.

**Issue Two: Failure to Perfect Notice**

■ The Bank contends in the alternative that, even if notice via FAX was sufficient service of notice of Guthrie's adverse claim, Guthrie failed to perfect its notice in accordance with the Adverse Claims Act. Again, we agree with the Bank.

Indiana Code § 28–9–4–1 provides that following proper notice of an adverse claim as discussed in Issue One, the depository institution shall place a hold on the deposit account described in the notice; however

(b) If within three (3) working days after receipt by a depository financial institution of the notice required under IC 28–9–3–3(b)(1), the adverse claimant has *failed to serve* or *cause to be served* an apparently valid order directing the depository financial institution to hold or restrict the funds in a deposit account against which an adverse claim is asserted, the depository financial institution shall treat the deposit account as if no notice of an adverse claim had been given.

IND.CODE § 28–9–4–1(b) (emphases added). In the instant case, Guthrie FAXed notice of its adverse claim to the Bank on January 26, 1995. Guthrie filed its complaint against Leslie and its motion for prejudg-

ment garnishment against the Bank on January 30, and the court entered its order directing the Bank to appear as a garnishee defendant on that same day. However, the Sheriff did not serve the summons and court order upon the Bank until February 2, 1995.

Although Guthrie· concedes that it "failed to serve" a valid order upon the Bank within three working days following its preliminary FAX notice, Guthrie contends that it did "cause to be served" a valid order. Guthrie asserts that it could not have been more diligent than to place the papers to be served in the hands of the Sheriff. Essentially, Guthrie asserts that the "cause to be served" requirement means only that an authorized party must be requested to make service but does not mean that actual service must be accomplished within the time prescribed.

■ We must first examine the plain and ordinary meaning of the word "cause." In order to determine the everyday, ordinary and usual meaning of words, courts may properly consult English language dictionaries. *Ashlin,* 637 N.E.2d at 167. The term "cause" means to "effect; make happen; bring about." *The American Heritage Dictionary* 214 (1981).

Guthrie correctly argues that it invoked Indiana's Prejudgment Attachment and Garnishment Statute (the "Prejudgment Attachment Statute"), Indiana Code § 34–1–11–1 *et seq.,* when it moved for and obtained a court order directing the Bank to appear as a garnishee-defendant. However, Guthrie erroneously contends that under the Prejudgment Attachment Statute the summons and order can only be served by the Sheriff. Guthrie argues that because it sought the remedy of prejudgment attachment, it had no alternative but to rely on the Sheriff to serve the Bank with the court order within the three working days allowed by the Adverse Claims Act.

■ To the contrary, the Prejudgment Attachment Statute does not require the Sheriff to serve the summons and order but provides that the "summons shall be served in the manner provided by the Indiana rules of trial procedure." IND.CODE § 34–1–11–20(c). Pursuant to Indiana Trial Rules 4.1

and 4.6, Guthrie had several avenues by which it could have accomplished service of the court's order. Moreover, an adverse claimant may not be relieved of the procedural requirements imposed by the Adverse Claims Act merely because he also seeks the remedy of prejudgment attachment. *See* IND.CODE § 28–9–3–2.

We find untenable Guthrie's contention that simply filing suit and placing the order to be served in the hands of the Sheriff within three working days of the preliminary notice was sufficient to satisfy the "cause to be served" requirement of Indiana Code 28–9–4–1(b). Such a practice could extend indefinitely the time during which a bank would be required to keep its depositor's account frozen following service of the preliminary notice. Guthrie's argument that it could not have been more diligent than to ask the Sheriff to serve the order is without merit. Guthrie failed to effect service of a valid court order directing the Bank to hold or restrict the funds in Leslie's account within three working days following the purported preliminary notice of Guthrie's adverse claim. Thus, assuming arguendo that the FAX was sufficient preliminary notice, after January 31, 1995, the Bank would have been required to treat Leslie's deposit account as if no notice of the adverse claim had been given.

■ Finally, Guthrie maintains that regardless of the Adverse Claims Act, an equitable lien attached to the claimed funds by virtue of the Sheriff's service of the prejudgment summons and order. Again, we cannot agree. Neither the equitable lien theory nor Guthrie's institution of prejudgment attachment proceedings is relevant to our determination of this case. The Adverse Claims Act specifically provides that unless the adverse claimant satisfies the requirements of the Act, a bank may, without being held accountable, honor the instructions of its depositor "notwithstanding" institution of prejudgment attachment proceedings or any other rule or doctrine of law which would "create or impose in favor of the adverse claimant a lien ... or other right with respect to a deposit account." IND.CODE § 28–9–3–2.

Therefore, Guthrie's noncompliance with the terms of the Adverse Claims Act is dispositive of the Bank's liability for the claimed funds. Because Guthrie did not comply with the Adverse Claims Act, the Bank was under no duty to restrict Leslie's account. The trial court erred when it entered summary judgment and recognized an equitable lien in favor of Guthrie.

## CONCLUSION

In sum, we conclude that Guthrie failed to comply with the service of notice and perfection requirements of the Adverse Claims Act and, thus, that the Bank had no duty to restrict the withdrawal of funds from Leslie's account. The trial court erred when it granted Guthrie's motion for summary judgment in the amount of $12,785.18 for the alleged wrongful transfer of funds. We reverse the trial court's entry of summary judgment in favor of Guthrie and direct that summary judgment be entered in favor of the Bank.

Reversed.

ROBERTSON, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I agree with the majority's conclusion that at the present time service by FAX does not comport with the requirement for "service" of an adverse claim under I.C. 28–9–3–3. I also agree that until the statute is amended to so provide, or until our Supreme Court, by rule, allows for FAX service of notice, service must be accomplished under existing Trial Rule 5. I do not, however, agree that the crucial factor in determining the adequacy of service is whether a proof of service has been or can be made.

The forerunner of Trial Rule 5 was Rule 1–16. Under that Rule, pleadings were required to be "served personally or by mail". See Rules of the Indiana Supreme Court (1967). The Rule did not make provision for a proof of service. Indeed, our Supreme Court held that since the rules did not "provide for any ascertainable method of determining the fact of delivery", it was error to strike the defendants' motion for new trial upon plaintiffs' affidavit that the motion had not been received. *State ex rel. Lake County Dep't of Pub. Welfare v. Lake Superior Court* (1959) 239 Ind. 652, 654, 159 N.E.2d 849, 850. The motion for new trial had in fact been filed with the court and according to a counter-affidavit filed in response to the motion to strike, a copy had been mailed to plaintiffs. The Supreme Court's holding was to the effect that the motion had been duly "served" by U.S. Mail as required by the Rule. Therefore, despite the lack of a "proof" of service, the Supreme Court ordered reinstatement of the motion for new trial.

To be sure, the language from *Lock Joint Tube Co. v. Citizens Trust and Sav. Bank of South Bend* (1941) 218 Ind. 162, 170, 31 N.E.2d 989, 993, relied upon by the majority, does imply that proof of service is a factor in determining what method of service will pass muster. That language is used, however, in the context of the mode or manner in which service is achieved, not upon an event occurring after service. The determinative consideration focuses upon a "service" which is designed to give notice, and it has been held that actual knowledge of the matters involved "is relevant and probative to an inquiry into the likely efficacy of the service employed." *In Matter of R.L.W.* (1994) Ind. App., 643 N.E.2d 367, 369, *reh'g denied.*

It may be noted that the *Lock Joint Tube Co.* decision, *supra*, was occasioned by a situation in which the record showed no service at all, a defect which was understandably fatal to the presentation of the cause in issue. That is unlike the situation presented in *State ex rel. Lake County, supra*, and unlike the FAX notice which was sent in this case. Here, Guthrie, or its attorney, as the entity which FAXed the notice, was clearly in a position to "make due proof thereof to the court". 218 Ind. at 170, 31 N.E.2d at 993. Therefore under the circumstances, the service, had it been by personal delivery or mail, would have sufficed even under the majority's reading of the *Lock Joint Tube Co.* language.

Be that as it may, proof of service which routinely follows the actual service, is but a means of establishing that service was in fact

accomplished. As stated in *Heaton v. Peterson* (1892) 6 Ind.App. 1, 7, 31 N.E. 1133, 1135: "The [proof] is not the service, but only the evidence of it." If notice is duly served, that service is valid without the formality of a formalized proof of service, so long as the actuality of service may be demonstrated. Here, the service was accomplished neither by personal delivery or by mail. It was therefore defective without regard to a proof of service.

I fully concur with Issue Two as decided by the majority and for the reasons stated herein, I join in the reversal of the judgment entered by the trial court.