ATTORNEYS FOR APPELLANT
P. Gregory Cross
Muncie, Indiana

Sara E. Shade
Muncie, Indiana

ATTORNEY FOR APPELLEE
Stan G. Wyrick
Muncie, Indiana



FILED

Sep 09 2010, 11:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court



No. 18S04-1002-CV-118

IN RE: THE ESTATE OF HARRY L. RICKERT,

CAROLE BAKER, PERSONAL REPRESENTATIVE
OF THE ESTATE OF HARRY L. RICKERT,
DECEASED,

*Appellant (Petitioner Below),*

v.

KETA TAYLOR,

*Appellee (Respondent Below).*

Appeal from the Delaware Circuit Court, No. 18C01-0605-EU-118
The Honorable Marianne Vorhees, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 18A04-0812-CV-746

**September 9, 2010**

**Boehm, Justice.**

A holder of a power of attorney is a fiduciary and therefore any transaction in which the holder uses a power of attorney to transfer assets to the holder is presumed invalid. The Non-Probate Transfer Act creates a presumption that joint ownership of a bank account is intended to transfer the account to the survivor(s) at the death of an owner. We hold that the Act's presumption of intent to transfer does not overcome the fiduciary's duty to prove that the account was properly established as a joint account. The holder in this case used the power to establish

joint accounts with herself, and did not overcome the presumption that the accounts were not validly established as joint accounts.

**Facts and Procedural History**

Harry Rickert and his wife, Novella, had no children. When Novella suffered a stroke in 1990, Rickert hired Keta Taylor to assist him in caring for her. After Novella's death in 1991, Taylor continued to provide general housekeeping duties and care for Rickert until his death in May 2006 at the age of 93. In 1992, Rickert executed a will that divided his residuary estate equally among four nieces and nephews, and Carole Baker, whom Rickert described in his will as one "loved as if she were [the Rickerts's] daughter."

According to some witnesses Rickert could sign his name but was otherwise illiterate. In 1997 Rickert gave Taylor a general power of attorney, and six months later he executed a codicil to his will adding Taylor as a sixth residuary beneficiary. In 1999, a second codicil named Baker as personal representative of his estate. At that time he told Baker that his estate was worth about $600,000 and that each beneficiary would receive approximately $100,000 when he died.

Between 1999 and 2006, Rickert's health declined. He required more constant care and was attended by Taylor on weekdays and by other hired caregivers on the weekends. The evidence is undisputed that by 2005 Rickert could no longer make decisions for himself, but it is not clear how long that was the case before then. According to Baker and Ervin Rickert and Walter Washburn, two of Rickert's nephews, Rickert lost the ability to make conscious decisions for himself sometime around 2000, but Taylor disputes that and the record includes no medical evidence. A Mutual Federal Savings Bank employee testified that when she dealt with Rickert prior to 2002 it was her opinion that he understood the terms of the accounts that he and Taylor opened.

At Rickert's death his probate estate was valued at approximately $147,000, including real estate, furniture and household goods, corporate stocks, cash, and the proceeds of insurance policies payable to the estate. Baker also identified $404,000 in non-probate assets. Specifically, a number of bank certificates of deposit (CDs) had been purchased in Rickert's name as joint owner with Taylor and others. Ind. Code § 30-5-6-4(b) (2004). Because Baker

2

was herself a joint owner of CDs that had been established by Rickert, she requested that the trial court appoint a special personal representative to investigate whether the joint accounts should be recovered for the Estate. I.C. § 29-1-13-16. Attorney P. Gregory Cross was appointed and conducted an investigation. Some, but not all banks furnished the documentation surrounding these accounts.

Cross concluded that at the time of his death, in addition to the probate estate, Rickert did own other assets totaling approximately $404,000. These included:

1. At least nine CDs totaling $168,000 and one checking account with a balance at Rickert's death of $3010. These accounts were at four Muncie area banks and each was established from 2001 to 2005 as either a joint account owned by Rickert and Taylor, or an account in Rickert's name with Taylor as "Pay on Death" beneficiary. The documentation creating each of these accounts was signed only by Taylor using her power of attorney to sign for Rickert;

2. One checking account with a balance at Rickert's death of $2833 and one CD worth $31,200. The checking account was established in 2001 as a joint account with Taylor and the CD purchased in 2000 named Taylor as POD beneficiary. The documentation creating these two accounts was signed by Rickert himself;

3. Two CDs totaling $22,000 naming Charles Jester as POD beneficiary. Taylor's marriage to Jester was dissolved in 1999. According to Taylor, Rickert and Jester were close friends. One of these CDs for $10,000 was purchased in 2000 by documentation bearing Rickert's signature and a $12,000 CD was purchased in 2001 with Rickert's signature on the I.R.S. withholding documentation, but not the account papers;

4. Three CDs totaling $100,009 were established in 2001, 2004 and 2005 as joint accounts owned by Rickert and Taylor. The documentation creating these accounts is not in the record;

5. One $50,000 CD with Rickert and Baker as joint owners was purchased in 2001 by documents signed by Rickert. Documentation relating to a second CD payable on death to Baker indicates only that its value as of Rickert's death was $40,045;

3

6.  One $10,000 CD jointly owned by Rickert and Nancy Wolfe, who, according to Taylor, was another of Rickert's caregivers. This CD was created in 2001 by Taylor using her power of attorney; and

7.  Two vehicles titled as owned jointly by Rickert and Taylor.

In addition to these assets located at death, Cross identified three CDs totaling $39,000 that apparently matured in 2005 without any record of the use of the proceeds. All of these assets were purchased originally with Rickert's funds, or were renewals of CDs purchased with his funds.

In November 2007, Cross issued a report recommending that the thirteen accounts benefiting Taylor that were created without evidence of Rickert's involvement be placed in the Estate. Cross proposed that the remaining jointly held accounts and pay-on-death accounts be released to their presumptive owners. The report also recommended that the two vehicles be returned to the Estate. Baker requested a trial.

At the trial the Estate successfully invoked the Dead Man Statute, Indiana Code section 34-45-2-4, to exclude any testimony from Taylor. The trial court nonetheless ruled for Taylor on most issues. The trial court relied on the Non-Probate Transfer Act (NPTA), which provides that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." I.C. § 32-17-11-18(a). The trial court concluded that "[t]he estate has failed in its burden to show by clear and convincing evidence that Harry L. Rickert intended anything different than the joint ownership or pay on death status of the accounts or certificates of deposits in this matter." The trial court accepted Cross's recommendation as to the vehicles, which were not "sums remaining on deposit" subject to the NPTA, but ordered that the funds in all accounts and CDs be released to their presumptive owners.

The Estate appealed, and a majority of the Court of Appeals reversed and remanded with directions to apply the common law presumption of undue influence to determine the validity of Taylor's transactions as attorney-in-fact. In re Estate of Rickert, 912 N.E.2d 831, 838 (Ind. Ct. App. 2009). Judge Barnes dissented, finding the NPTA placed the burden on the Estate to

4

establish by clear and convincing evidence that Rickert did not intend for Taylor to receive the funds in the joint accounts. Id. at 839. Taylor argued that the trial court erred in excluding her testimony justifying her transactions. She contended that the Estate had waived any objection to her testimony based on the Dead Man's Statute by filing her deposition with Cross's report in the trial court. Id. at 838. The Court of Appeals held that her testimony was properly excluded. Id. We granted transfer.

## Standard of Review

This case raises two issues. First, does the NPTA override the common law and statutory presumptions of invalidity of transactions in which a holder of a power of attorney uses that power to benefit the holder? Second, does filing a deposition of a person adverse to an estate constitute use of the person's testimony that waives the estate's Dead Man's Statute objection to the claimant's testifying adversely to the estate? Both issues present questions of law which we review de novo. Smith v. Champion Trucking Co., 925 N.E.2d 362, 364 (Ind. 2010).

## I.  Presumptions As To Joint Accounts Established Through a Power of Attorney

The trial court did apply the common law presumption to order the two vehicles, which were not subject to the NPTA, to be restored to the probate estate, finding the common law presumption of invalidity was not rebutted. The NPTA was deemed conclusive as to the accounts, however. The NPTA states: "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." I.C. § 32-17-11-18(a). It is undisputed that Taylor's name appears as joint owner or pay on death beneficiary for the thirteen accounts at issue. The trial court and the Court of Appeals dissent found this statute controlling and found no clear and convincing evidence that Rickert did not intend to create joint accounts with rights of survivorship.

A person holding a power of attorney is in a fiduciary relationship to the person granting the power. I.C. § 30-5-6-3; see Nichols v. Estate of Tyler, 910 N.E.2d 221, 229 (Ind. Ct. App. 2009). Here we have a classic example of self-dealing by a fiduciary. On the face of the transactions Taylor used her position as attorney-in-fact for Rickert to transfer an interest in

5

Rickert's assets to herself. At common law, such a transaction was presumed to be invalid. Nichols, 910 N.E.2d at 229; see also In re Estate of Wade, 768 N.E.2d 957, 963 (Ind. Ct. App. 2002). This presumption now finds statutory support. Indiana Code section 30-5-9-2(b) (2005) eliminates the presumption of invalidity of a "gift, bequest, transfer, or transaction" between the principal and the attorney-in-fact only if it is "made by the principal" and "not made by an attorney-in-fact acting for the principal under a power of attorney." If undue influence is presumed, the burden "then shifts to the dominant party to demonstrate, by clear and unequivocal proof, that the transaction was voluntary and fair." 4 Henry's Indiana Probate Law and Practice § 30.18 at 155 (2009).

In sum, it was up to Taylor to prove by clear and convincing proof that her use of her power of attorney from Rickert to create accounts purportedly giving her rights of survivorship in Rickert's money was "voluntary and fair." With respect to both the vehicles and the accounts, the record before us includes no evidence beyond the documents evidencing transfer of ownership to support either Rickert's knowing and voluntary consent to these transactions or their inherent fairness. If these transactions were indeed "voluntary and fair," i.e., if Rickert indeed intended to confer several hundred thousand dollars on Taylor, there were abundant means to validate these transactions by third party witnesses or contemporary documents.[1] Because none of these were pursued at the time these transactions were done, the law leaves Taylor with the uphill battle of attempting to prove them by clear and convincing evidence years after the fact. On this record she did not succeed.

Under the trial court's view of the law, in the absence of any clear evidence that Rickert did not intend to create joint accounts, the trial court was compelled to award the bank accounts

---

[1] Once a presumption of undue influence has been established, the party claiming the validity of the transactions may rebut the presumption with proof that the transactions were voluntary and fair. In Meyer v. Wright, 854 N.E.2d 57, 62–64 (Ind. Ct. App. 2006), a son successfully rebutted the presumption of undue influence by presenting testimony from a witness that the father's intention was to make the questioned changes to his will, a physician that the father was competent at the time he changed his will, and another witness concerning the quality of the father's relationship with the son. In Villanella v. Godbey, 632 N.E.2d 786, 791 (Ind. Ct. App. 1994), a power of attorney received over $48,000 and thirty-seven acres of real property from the decedent. Id. The attorney-in-fact presented evidence that the decedent personally signed all of the bank account withdrawal slips and checks, and testimony from an attorney who witnessed the real estate transfer that the transfer was voluntary. The court found that this evidence, taken together with evidence of the attorney-in-fact's care of decedent in declining health, was enough to rebut the presumption of undue influence. Id. In Outlaw v. Danks, 832 N.E.2d 1108, 1111–12 (Ind. Ct. App. 2005), a nephew who held his aunt's power of attorney successfully rebutted the presumption of undue influence with testimony of bank employees who attested to the decedent's statements that she understood the contents of the will at the time she executed it.

to the persons shown as joint owners. But because of the presumption of invalidity of self-dealing by fiduciaries, the same absence of clear evidence dictates that the judgment of the trial court be reversed and the joint assets restored to the Estate. Finally, both the trial court and the dissent in the Court of Appeals cited In re Estate of Banko, 622 N.E.2d 476 (Ind. 1993), in support of their reading of the NPTA. We do not find Banko controlling here. In Banko, the decedent had been married to his third wife Nadine Banko for seventeen years. Id. at 477. The decedent's daughter, who was a will beneficiary, petitioned to reopen Nadine's estate when she learned that the decedent's estate had not included certain joint accounts held by Nadine and decedent. Id. at 478. We held that the joint accounts were properly excluded from the estate because they were joint accounts subject to the NPTA, and that the daughter had not presented clear and convincing evidence that decedent did not intend for Nadine to receive the account proceeds. Id. at 480. We also noted that "[t]he legislative enactment of the survivorship presumption by unmistakable implication replaces the common law presumption of undue influence." Id.

Banko was correct in holding that the NPTA creates a strong presumption that a joint account holder is entitled to the proceeds in the account on death of the other account holder. Banko based this holding on the "underlying assumption . . . that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death." Id. (quoting Unif. Probate Code § 6-104(a), 8 U.L.A. (1983)). But in Banko there was no issue whether the accounts were in fact established by the decedent. Here the presumption is that Taylor's use of her power of attorney to benefit herself did not create valid accounts in the first place, and that presumption was not rebutted.

## II. Waiver of Objection Based on Dead Man's Statute

When Taylor attempted to testify, the Estate objected and the trial court excluded any testimony related to "the things that deal with the accounts and surrounding the accounts and the handling of them." The court cited the Dead Man's Statute, Indiana Code section 34-45-2-4, as the reason for the exclusion. The Dead Man's Statute establishes as a matter of legislative policy that claimants to the estate of a deceased person should not be permitted to present a court with their version of their dealings with the decedent. In re Estate of Neu, 588 N.E.2d 567, 569 (Ind.

7

Ct. App. 1992) ("The dead man's statute guards against false testimony by requiring that, when the lips of one party to a transaction are closed by death, the lips of the other party are closed by law."). The statute provides that "a person (1) who is a necessary party to the issue or record; and (2) whose interest is adverse to the estate; is not a competent witness as to matters against the estate." I.C. § 34-45-2-4(d). Taylor contends that although she is an incompetent witness under the Dead Man's Statute, the Estate waived any objection to her competence by filing her deposition with the trial court. Taylor cites the rule that if a party "uses" the deposition in court for an evidentiary purpose, that party waives the protection of the Dead Man's Statute. Taylor v. Taylor, 643 N.E.2d 893, 895 (Ind. 1994) (designating evidence in summary judgment waives the statute); see also Carlson v. Warren, 878 N.E.2d 844, 849 (Ind. Ct. App. 2007) (estate beneficiaries waived application of Dead Man's Statute by designating numerous excerpts from deposition testimony). This doctrine is grounded in a notion of fairness, and prevents the estate from being able to pick and choose from among the statements the claimant may have made. But the waiver is effected by actual use of the claimant's deposition, not by "[t]he mere taking of a deposition." J.M. Corp. v. Roberson, 749 N.E.2d 567, 571 (Ind. Ct. App. 2001).

The Estate filed the deposition with the trial court but did not cite it in summary judgment proceedings or offer it into evidence at trial. Although Taylor concedes that the Estate did not actually use the deposition for any evidentiary purpose, she contends that filing it with the trial court allowed for its potential use. Because the Estate could have used the deposition testimony, she argues, she should have been able to testify at trial. We do not agree. In order to waive objection to the competence of a witness under the Dead Man's Statute by taking advantage of a deposition of a person who is adverse to a decedent's estate, the estate must use the deposition by offering it into evidence at trial or pretrial hearing, or citing it to the court as, for example, by designating it in support of or opposition to a summary judgment motion.

**Conclusion**

The judgment of the trial court is reversed. This case is remanded to the trial court with directions to order restoration to the Estate of Harry Rickert of bank accounts owned of record by Rickert and Keta Taylor that were created through use of Taylor's power of attorney from Rickert and lacking any supporting documentation indicating participation by Rickert.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.