AMERICAN SAVINGS, FSB,
Appellant–Defendant,

v.

Steve H. TOKARSKI, Successor Personal Representative of the Estate of John Wroblewski, on Behalf of the Estate, Appellee–Plaintiff.

No. 45A04–1105–CC–237.

Court of Appeals of Indiana.

Dec. 30, 2011.

Rehearing Denied April 13, 2012.

---

Harold Abrahamson, Scott Bilse, Jonathan E. Halm, Abrahamson, Reed & Bilse, Hammond, IN, Attorneys for Appellant.

Steven A. Kurowski, Schererville, IN, Attorney for Appellee.

## OPINION

GARRARD, Senior Judge.

Plaintiff–Appellee Steve H. Tokarski, in his capacity as successor personal representative of the Estate of John Wroblewski, filed a three-count complaint against Defendant–Appellant American Savings, FSB, in Lake Superior Court. Both parties filed motions for summary judgment. American Savings now appeals the trial court's order granting summary judgment in favor of Tokarski on the first two counts. We reverse and remand.

On June 20, 2003, Wroblewski, then in his late eighties, executed a general power of attorney naming Zorica Milovanovic as his attorney-in-fact and giving her the authority to, among other things, engage in banking transactions on his behalf. He also executed a will leaving everything to Milovanovic and naming her as the personal representative of his estate. On June 26, 2003, Milovanovic used the power of attorney to purchase two cashier's checks from Citizens Financial Services with funds from Wroblewski's account there. The first check was for $98,869.78, and the second check was for $414,236.00, for a total of $513,105.78. Both checks were made payable to Wroblewski. The next day on June 27, 2003, Milovanovic opened a savings account at American Savings in her name only with an opening deposit of $200. She then endorsed the cashier's checks "Zorica Milovanovic P.O.A. Jhon [sic] Wroblewski," Appellant's App. pp. 59, 62, and deposited them into her savings account. In November 2003, Milovanovic used $170,000 from her savings account to purchase a certificate of deposit. Later that month, Milovanovic assigned the certificate of deposit to American Savings as collateral for a $154,800 mortgage loan.

Wroblewski died in February 2004. In March 2004, Milovanovic offered his will to probate and was appointed personal representative of his estate. In May 2004, Wroblewski's heirs filed a complaint in Lake Superior Court contesting the will, alleging that it was a result of Milovanovic's undue influence. In January 2005, Wroblewski's heirs filed a petition to remove Milovanovic as personal representative of the estate. In March 2005, Wroblewski's heirs filed a complaint against Milovanovic and others in the United States District Court for the Northern District of Indiana. As to Milovanovic, the complaint alleged that she breached her fiduciary obligation to Wroblewski and converted $513,105.78 for her own use.

In April 2005, Milovanovic directed American Savings, through a Notice of

Restriction, to "tag, label and identify" her certificate of deposit "so that [she would] not [be] able to in any way alter, transfer, pledge or negotiate the certificate without the written consent" of her attorney and the attorney for Wroblewski's heirs. *Id.* at 77. The vice president of American Savings accepted and signed the notice of restriction. Milovanovic became delinquent on her mortgage loan. In May 2005, American Savings applied the funds held in the pledged certificate of deposit to pay off her mortgage. American Savings did not notify either of the attorneys named in the notice of restriction.

Fifth Third Bank became the successor personal representative of Wroblewski's estate in July 2005. In November 2005, Lake Superior Court declared Wroblewski's will invalid, concluding that it was the product of Milovanovic's undue influence. The same day the will was declared invalid, Fifth Third Bank sent a letter to American Savings requesting records and noting that Milovanovic deposited at American Savings two cashier's checks made payable to Wroblewski in an account solely in her name. In December 2005, the federal district court entered judgment against Milovanovic and others in the amount of $513,105.78.[1] Also in December 2005, Tokarski succeeded Fifth Third Bank as the personal representative of Wroblewski's estate.

On June 15, 2007, Tokarski filed the present case against American Savings. Count I was based on American Savings's act of permitting Milovanovic to deposit the $513,105.78 in cashier's checks into her own savings account:

4. Although American Savings was aware that the money belonged to John Wroblewski and that Zorica Milovanovic was endorsing the [two cashier's] checks

in her capacity as the alleged attorney in fact for John Wroblewski, the bank did not deposit the money in John Wroblewski's name, and permitted Zorica Milovanovic to deposit the money as her own, thereby converting the funds of John Wroblewski to the exclusion of John Wroblewski and subsequently his estate.

. . . .

6. With the knowledge that the funds were rightfully John Wroblewski's and that Zorica Milovanovic was exercising authority on his behalf for his benefit as his alleged attorney in fact, [American Savings] breached its contract to hold the funds for John Wroblewski, by dealing with his agent as if she were the principal.

*Id.* at 16. Count II was based on American Savings's act of applying Milovanovic's pledged certificate of deposit to pay off her mortgage despite the notice of restriction:

8. On or about June 1, 2005, without prior approval from counsel as agreed [in the notice of restriction], American Savings permitted the withdrawal of One Hundred Fifty–Four Thousand Eight Hundred Dollars and 00/100 ($154,800.00) to pay off a mortgage which it held on real estate owned by Zorica Milovanovic.

9. The taking of funds to pay off the mortgage amounted to a further conversion of assets belonging to the Estate of John Wroblewski.

*Id.* at 17. In Count III, Tokarski demanded treble damages, attorney's fees, and costs due to American Savings's conversion of the funds as set forth in the complaint. *Id.* at 18.

Both parties moved for summary judgment and filed memorandums and designations in support of their motions. The parties filed responses to each other's mo-

---

1. Milovanovic is now believed to be residing    outside of the United States.

tions, and American Savings filed a reply to Tokarski's response. After a hearing, the trial court entered an order with findings and conclusions granting summary judgment in favor of Tokarski on the first two counts and granting summary judgment in favor of American Savings on the third count. The trial court found American Savings liable on Count I pursuant to *In re Estate of Rickert,* a case between an estate and the decedent's attorney-in-fact, in which our Supreme Court stated, "A holder of a power of attorney is a fiduciary and therefore any transaction in which the holder uses a power of attorney to transfer assets to the holder is presumed invalid." 934 N.E.2d 726, 727 (Ind.2010). Relying on *In re Estate of Rickert,* the trial court stated:

> There is no dispute that Milovanovic, with the assistance of American, engaged in a transaction presumed to be invalid by the common law as well as the Indiana Code. This Court finds that by facilitating a transaction presumed to be invalid on its face, American breached its duty to Wroblewski who was the owner of the funds in question.

Appellant's App. p. 11. The trial court also found American Savings liable on Count I pursuant to Indiana Code section 26–1–3.1–307 (1994), which provides circumstances in which a taker of a negotiable instrument has notice of a fiduciary's breach of fiduciary duty, and Indiana Code section 26–1–3.1–420 (1998), which provides that a negotiable instrument is converted if "a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Because the trial court found American Savings liable under Count I, the court found it unnecessary to separately address Count II. Finally, the trial court found that Tokarski was not entitled to treble damages under Count III. American Savings now appeals.

American Savings raises three issues, which we restate as:

I. Whether the trial court erred by granting Tokarski's motion for summary judgment and denying American Savings's motion for summary judgment on Count I.

II. Whether the trial court erred by granting Tokarski's motion for summary judgment and denying American Savings's motion for summary judgment on Count II.

III. Whether there are genuine issues of material fact as to the amount of Tokarski's damages and American Savings's defense of set-off.

As an initial matter, we note that Tokarski invites us to apply the wrong standard of review. Tokarski asserts that we must determine whether the record supports the findings and then whether the findings support the judgment. This is not the standard of review employed when reviewing an order on summary judgment. When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.,* 904 N.E.2d 1267, 1269–70 (Ind.2009). All facts established by the designated evidence and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.,* 864 N.E.2d 1058, 1062 (Ind.2007). The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. *Nasser v. St. Vincent Hosp. & Health Servs.,* 926 N.E.2d 43, 47 (Ind.Ct.App.2010), *trans. denied.* We consider each motion separately to determine

whether the moving party is entitled to judgment as a matter of law. *Id.* In the summary judgment context, the entry of specific facts and conclusions aids our review by providing us with a statement of reasons for the trial court's decision, but it has no other effect. *City of New Albany v. Cotner*, 919 N.E.2d 125, 131 (Ind.Ct. App.2009), *trans. denied.*

## I. COUNT I: RECEIVING DEPOSIT OF CASHIER'S CHECKS TO MILOVANOVIC'S SAVINGS ACCOUNT

American Savings contends that the trial court erred by granting Tokarski's motion for summary judgment and denying American Savings's motion for summary judgment on Count I. At the proceedings below, Tokarski argued that American Savings was liable for permitting Milovanovic to deposit the two cashier's checks into her own savings account based on conversion, failure to exercise ordinary care, breach of contract, and Indiana Code section 26–1–3.1–307. We address each in turn.

## A. CONVERSION AND FAILURE TO EXERCISE ORDINARY CARE

At the summary judgment hearing, the trial court questioned Tokarski's counsel regarding the legal basis of Count I. Tokarski's counsel responded that Count I was based on contract and not tort:

THE COURT: What is the basis of your Count I? Is it—

[TOKARSKI'S COUNSEL]: Contract.

THE COURT: It's *ex contractu* as opposed to *ex delicto?*

[TOKARSKI'S COUNSEL]: Yes.

THE COURT: Is that what you're saying on Count I?

[TOKARSKI'S COUNSEL]: Yeah, in fact—actually, the complaint says contract.

THE COURT: Okay. You're not even getting into the tort aspect of—

[TOKARSKI'S COUNSEL]: Exactly, exactly.

Tr. pp. 38–39. An attorney can make an admission to a trial court that is binding upon his client. *Heyser v. Noble Roman's, Inc.*, 933 N.E.2d 16, 19 (Ind.Ct.App.2010), *trans. denied.* A statement which contains ambiguities or doubt is not to be regarded as a binding admission. *Id.* The unambiguous statements by Tokarski's counsel constituted a binding admission that Count I does not state a claim for conversion, failure to exercise ordinary care, or any other tort. *See id.* at 20 (trial court did not err by granting partial summary judgment to franchisor on franchisees' alleged constructive fraud claim where franchisees' counsel stated at a hearing that franchisees were alleging actual fraud and not constructive fraud). We therefore conclude that Tokarski has abandoned any tort claims in Count I.[2] Further, because Tokarski abandoned these claims altogether and not merely for the purposes of his summary judgment motion, we need not address whether American Savings has established that it is not liable for conversion or failure to exercise ordinary care for the purposes of its own summary judgment motion.

## B. BREACH OF CONTRACT

Tokarski's breach of contract claim is based on the alleged contract between American Savings and Wroblewski that arose when American Savings relied on the power of attorney to permit Milovanovic to deposit the cashier's checks. In effect, Tokarski claims that Wroblewski

---

**2.** American Savings asserts that Tokarski abandoned these claims to avoid American Savings's contention that such claims were barred by the three-year statute of limitations provided by Indiana Code section 26–1–3.1–118(g) (1993). *See* Appellant's Br. pp. 27–28.

was the real owner of Milovanovic's savings account.

In the proceedings below, Tokarski pointed to *In re Estate of Rickert*, 934 N.E.2d 726 (Ind.2010). In that case, Harry Rickert hired Keta Taylor to help care for his ailing wife. After Rickert's wife died in 1991, Taylor stayed on to care for Rickert and provide general housekeeping duties until his death. In 1997, Rickert gave Taylor a general power of attorney. Rickert died in 2006 at the age of ninety-three. At the time of his death, Rickert owned multiple bank accounts that were either joint accounts with Taylor or accounts in Rickert's name with Taylor named as the pay-on-death beneficiary. In an action initiated by Rickert's estate, the trial court ruled that these accounts belonged to Taylor. Our Supreme Court reversed. The Court noted that a person holding a power of attorney has a fiduciary relationship with the person granting the power. *Id.* at 730. The Court held that a transaction in which the attorney-in-fact uses his position as such to transfer an interest in the principal's assets to the attorney-in-fact is presumptively invalid. *Id.* To rebut the presumption, the attorney-in-fact must demonstrate by clear and convincing proof that the transaction was voluntary and fair. *Id.* Because Taylor failed to rebut the presumption, the trial court's judgment was reversed. *Id.* at 731, 732.

Tokarski cites *In re Estate of Rickert* to show that Milovanovic's savings account was really Wroblewski's account. As he states in his complaint, "[American Savings] breached its contract to hold the funds for John Wroblewski, by dealing with his agent as if she were the principal." Appellant's App. p. 16. *In re Estate of Rickert,* however, is distinguishable because in that case the estate was trying to recover funds from the attorney-in-fact.

Our Supreme Court said nothing about a bank's responsibility vis-a-vis the attorney-in-fact and the principal.

Even if *In re Estate of Rickert* could be interpreted to impose a duty on the part of American Savings, the case only demonstrates that Milovanovic's act of depositing the cashier's checks into her own savings account was presumptively invalid. American Savings designated Milovanovic's deposition in the will contest case and an affidavit from Milovanovic, both of which indicate that Wroblewski intended for Milovanovic to have the money. *See, e.g.,* Appellant's App. pp. 147 ("He give me permission, he said, 'Go to the banks,' he told me National Bank, Citizen Bank and People Bank, he said, 'Go and take the money out and put ... in another bank in your personal account in your name that nobody take money away from you.' "), 148 ("He give me every directions, everything what to do, he don't want it that nobody take his money away because he said I'm very honest person with him and he wants that I have."), 164 ("He told me he wanted to give me his Power of Attorney and wanted a Will to give everything to me."), 166–67 ("I closed everything that he had in his name at Citizens Financial.... This is what John told me to do. John wanted me to deposit this money in an account in my name outside of the town of East Chicago because the people there know everything and talk."). This was evidence to rebut the presumption of invalidity.

Tokarski argues that this evidence is barred by Indiana's Dead Man's Statute. *See* Ind.Code § 34–45–2–4 (2001). The purpose of the Dead Man's Statute is to protect decedents' estates from spurious claims. *In re Unsupervised Estate of Harris,* 876 N.E.2d 1132, 1135 (Ind.Ct.App.2007). "The Dead Man's Statute guards against false testimony by a survivor by establishing a rule of mutuali-

ty, wherein the lips of the surviving party are closed by law when the lips of the other party are closed by death." *Id.* (quotation omitted). We need not address Tokarski's argument because he failed to object to Milovanovic's testimony in the court below. *See Jordan v. Deery,* 609 N.E.2d 1104, 1108 (Ind.1993) (hearsay challenge to medical review panel opinion waived in appeal from summary judgment where party failed to present argument first to trial court). Tokarski has waived any objection to Milovanovic's testimony.

■ Tokarski next argues that American Savings failed to designate clear and convincing evidence to rebut the presumption of invalidity. However, to survive a motion for summary judgment, American Savings was only required to set forth evidence creating a genuine issue of material fact for trial. Since there was no objection to Milovanovic's testimony, American Savings did so. *See In re Estate of Neu,* 588 N.E.2d 567, 570 (Ind.Ct.App. 1992) (where estate argued that trial court erred by allowing testimony in contravention of Dead Man's Statute, this Court determined that estate called alleged incompetent witness in its case-in-chief and therefore could not complain that witness testified to absence of undue influence over decedent).

Tokarski also claims the existence of a contract between American Savings and Wroblewski by citing a case stating that the relationship between a depositor and a bank is contractual in nature. *See Teeling v. Ind. Nat'l Bank,* 436 N.E.2d 855, 858 (Ind.Ct.App.1982). A depositor is defined as "a person who, according to records maintained by the depository financial institution, has an interest in a deposit account, either individually or jointly with another person." Ind.Code § 28–9–2–4 (1989). The designated evidence includes American Savings's signature card for the savings account, which shows Milovanovic as the only person with an interest in the account. *See* Appellant's App. p. 79. The depositor of the savings account was thus Milovanovic and not Wroblewski.

■ We conclude that *In re Estate of Rickert* is inapplicable to this case and that a contract did not arise between American Savings and Wroblewski when Milovanovic opened her savings account. Tokarski provided the trial court with no other basis for a contract between American Savings and Wroblewski and pointed to no designated evidence showing the existence of such a contract.[3]

In its motion for summary judgment, American Savings designated evidence showing that there was no contract between Wroblewski and American Savings. Specifically, American Savings pointed to one of Tokarski's responses to its interrogatories:

> 27. State whether you contend there was a contractual relationship between [American Savings] and John Wroblewski, and if so, state each and every service [American Savings] contracted to perform for John Wroblewski.
>
> Response: There was never a contractual relationship between [American Savings] and John Wroblewski, because [American Savings] dealt with these

---

3. We therefore decline to address Tokarski's claim on appeal that American Savings owed Wroblewski a fiduciary duty based on the existence of such a contract. We also note that, in any event, the claim is waived because Tokarski presents it for the first time on appeal. *See Dunaway v. Allstate Ins. Co.,* 813 N.E.2d 376, 387 (Ind.Ct.App.2004) ("But the Dunaways present that argument for the first time on appeal. Issues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived.").

funds with Zorica Milovanovic as if these funds ... belonged to Zorica, not to Mr. Wroblewski.

Appellant's App. p. 123. This evidence shows that there was no contractual relationship between Wroblewski and American Savings. Tokarski asserted in his response to American Savings's motion for summary judgment that Milovanovic's act of opening the savings account with American Savings created a contract between Wroblewski and American Savings. Even if we did not treat Tokarski's answer to American Savings's interrogatory as an admission, we have already established above that the signature card for Milovanovic's savings account shows that she was the only depositor of the account. We therefore conclude that there is no genuine issue of material fact regarding whether there was a contract between Wroblewski and American Savings.

### C. INDIANA CODE SECTION 26–1–3.1–307

American Savings contends that the trial court erred by granting summary judgment for Tokarski based on Indiana Code section 26–1–3.1–307 of Indiana's Uniform Commercial Code.

Section 307 sets forth when a taker of an instrument has notice of a breach of fiduciary duty by the person negotiating the instrument. It "applies to cases in which a represented person is asserting a claim because a breach of fiduciary duty resulted in a misapplication of the proceeds of an instrument." Ind.Code § 26–1–3.1–307 cmt. 2. At first blush, Section 307 appears to be relevant because Wroblewski's estate claims that Milovanovic's alleged breach of fiduciary duty resulted in a misapplication of the proceeds of the cashier's checks.

Section 307 is designed to interact with Indiana Code sections 26–1–3.1–302 (1993) and 26–1–3.1–306 (1993). *See* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 19–5(b) (5th ed. 2008). Section 302 identifies when a person is a holder in due course. *See S. Cent. Bank of Daviess Cnty. v. Lynnville Nat'l Bank,* 901 N.E.2d 576, 582–83 (Ind.Ct.App.2009). A holder of an instrument cannot be a holder in due course if he takes the instrument with "notice of any claim to the instrument described in IC 26–1–3.1–306." Ind.Code § 26–1–3.1–302(a)(2)(E). Section 306, in turn, provides that a taker is subject to a claim of a right in the instrument or its proceeds unless the taker is a holder in due course:

> A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

A provision of Section 307 states, "Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person," and the remainder of the statute sets forth when a taker of an instrument has notice of a breach of fiduciary duty and thus notice of a claim. The claim of which a taker has notice is a claim described in Section 306. Ind.Code § 26–1–3.1–307 cmt. 2. Thus, a taker of an instrument who has notice of a breach of fiduciary duty under Section 307 has notice of a claim under Section 306 and therefore fails to be a holder in due course under Section 302. *See* White & Summers, *supra,* § 19–5(b) ("That is to say, one who has the knowledge specified in 3–307(b) has notice of a 'claim,' and fails to be a holder in due course (3–302). Such a person will then be 'subject to' that and other 'claims' (3–

306).").) Section 307 has been explained in this way:

> When a fiduciary holds an instrument in trust for or on behalf of the represented person, he is usually authorized to negotiate the instrument only for the benefit of the represented person. When the fiduciary negotiates the instrument for his own benefit rather than for the benefit of the represented person in breach of his trust, an equitable claim of ownership on the part of the represented person arises. The represented person may assert this claim against any person not having the rights of a holder in due course. A taker cannot be a holder in due course if he has notice of the claim of the represented person. Section 3–307 determines when the taker has notice of such a claim that prevents her from becoming a holder in due course.

6 William D. Hawkland & Lary Lawrence, *Uniform Commercial Code Series* § 3–307:3 (Rev. Art. 3) (1999) (footnotes omitted). Section 307 therefore does not define a cause of action but only sets forth when a taker of an instrument has notice of a claim such that the taker is not a holder in due course and is therefore subject to a claim of a right in the instrument or its proceeds.

For Section 307 to be relevant here, Tokarski must be pursuing the type of claim to which Section 306 refers. "Claims covered by [Section 306] include not only claims to ownership but also any other claim of a property or possessory right." Ind.Code § 26–1–3.1–306 cmt. We have already determined that Tokarski abandoned any tort claims under Count I and that there was no contract between American Savings and Wroblewski and thus no breach of any contract. Tokarski does not pursue any other claim of ownership or any other claim of a property or possessory right that would entitle him to the proceeds of the cashier's checks. Without such a claim, Section 307 is unavailing.

We therefore conclude that the trial court erred by granting summary judgment for Tokarski and denying summary judgment for American Savings on Count I.

## II. COUNT II: APPLYING PLEDGED CERTIFICATE OF DEPOSIT TO PAY OFF MILOVANOVIC'S MORTGAGE DESPITE NOTICE OF RESTRICTION

American Savings contends that the trial court erred by granting Tokarski's motion for summary judgment and denying American Savings's motion for summary judgment on Count II because that count does not state a claim for conversion and is in any event barred by the Indiana Depository Financial Institutions Adverse Claims Act. Because the Adverse Claims Act claim is dispositive, we need not address the conversion claim.

The purpose of the Adverse Claims Act is to protect banks and other financial institutions from double liability in situations where an adverse claimant seeks to obtain the funds of a bank's depositor. *Hendricks Cnty. Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1184 (Ind.Ct.App.1996), *trans. denied.* Because the relationship between a bank and its depositor is one of a debtor and creditor, the Adverse Claims Act protects the bank from claims of its depositor that could arise if the bank, in compliance with the Act, fails to follow its depositor's instructions. *Id.* Generally, the Adverse Claims Act provides that upon service of notice of an adverse claim in accordance with the Act, the bank is obligated to freeze the depositor's account until all parties' respective rights to the account can be determined. *Id.*

Notice to a depository financial institution of an adverse claim does not require the depository financial institution to recognize the adverse claim in any manner or to place a hold on or otherwise restrict withdrawal of funds from a deposit account except upon the conditions specified in Indiana Code sections 28–9–3–3 (1989) and 28–9–3–4 (1998). Ind.Code § 28–9–3–1 (1989). Section 28–9–3–3 applies to an adverse claimant who is not a money judgment creditor of a depositor, Ind. Code § 28–9–3–3(a), while Section 28–9–3–4 applies to an adverse claimant who is a money judgment creditor attempting to garnish a deposit account, Ind.Code § 28–9–3–4(a). Section 28–9–3–3 applies here because Wroblewski's heirs had not yet obtained a money judgment against Milovanovic at the time Milovanovic and American Savings signed the notice of restriction or at the time American Savings applied the pledged certificate of deposit to pay off Milovanovic's mortgage.

Section 28–9–3–3 provides in pertinent part:

(b) A depository financial institution may not be held accountable to an adverse claimant for funds in a deposit account that are claimed by the adverse claimant unless the adverse claimant:

(1) serves on the depository financial institution written verified notice of the adverse claim stating in detail:

(A) the nature of the adverse claim, including the facts from which the adverse claim arose;

(B) that an action has been instituted in a court having jurisdiction in Indiana, or will be instituted within three (3) working days after receipt by the depository financial institution of the notice; and

(C) that the action instituted will include all persons known by the adverse claimant to have a claim against or an interest in the deposit account;

(2) serves on the depository financial institution notice of an adverse claim with a restraining order, an injunction, or another legal process that:

(A) directs the depository financial institution to place a hold on or otherwise restrict withdrawals from a deposit account;

(B) is issued or appears to be issued by a court having jurisdiction as a result of an action in which the depositor, the depository financial institution, and all persons who are known to the depository financial institution as having an interest in the deposit account are parties; and

(C) is accompanied by a court order providing for the recovery and collection by the depository financial institution of all costs and expenses, including attorney's fees, that have been or may be incurred by the depository financial institution as a result of the action; or

(3) furnishes to the depository financial institution, in form and with sureties acceptable to the depository financial institution, a bond indemnifying the depository financial institution from payment of damages, costs and expenses, and attorney's fees incurred by the depository financial institution as a result of the:

(A) payment by the depository financial institution of the adverse claim;

(B) dishonor by the depository financial institution of any instructions from, or orders by, a depositor; or

(C) dishonor by the depository financial institution of other duties

imposed upon the depository financial institution by contract or law.

▆ Section 28–9–3–3 sets forth specific requirements that Wroblewski's heirs should have followed if they wanted American Savings to freeze Milovanovic's certificate of deposit account. To be sure, American Savings received Milovanovic's notice of restriction. However, the notice of restriction does not comply with the requirements set forth above. Contrary to Section 28–9–3–3(b)(1), the notice of restriction was not served upon American Savings. *See Hendricks Cnty. Bank & Trust Co.*, 663 N.E.2d at 1185 ("[P]roper service of the notice prescribed by statute is a prerequisite to a bank's accountability to an adverse claimant for funds in a deposit account.... [T]he term 'serves' means legally sufficient service of notice upon which a due return of service can be made."). Moreover, the notice of restriction did not provide American Savings with any of the specific information required under Section 28–9–3–3(b)(1)(A), (B), and (C). In addition, Tokarski does not direct us to any designated evidence showing that Wroblewski's heirs provided American Savings with notice of the adverse claim by serving it with a restraining order, injunction, or other legal process pursuant to Section 28–9–3–3(b)(2) or by furnishing it with a bond pursuant to Section 28–9–3–3(b)(3). To the extent Tokarski argues that American Savings was sufficiently apprised of the adverse claim regardless of the manner of notice, we disagree. *See id.* ("The Bank's actual knowledge of the claim is not a substitute for the official notice required by the statute."). Because the notice of restriction did not comply with the Adverse Claims Act and because there is no designated evidence showing that American Savings

was provided with any other proper notice of the adverse claim, American Savings is not liable for the portion of the certificate of deposit used to pay off Milovanovic's mortgage. *See id.* ("Guthrie did not serve notice sufficient under the Act to render the Bank accountable to Guthrie for the funds claimed.").

Further, we find that the notice of restriction was not violated. The designated evidence shows that Milovanovic assigned the certificate of deposit to American Savings as collateral for a $154,800 mortgage loan in November 2003. It was not until April 2005 that Milovanovic and American Savings signed the notice of restriction, which directed American Savings to "tag, label and identify" her certificate of deposit "so that [she would] not [be] able to in any way alter, transfer, pledge or negotiate the certificate without the written consent" of her attorney and the attorney for Wroblewski's heirs. Appellant's App. p. 77. By this time, of course, the certificate of deposit had already been pledged as collateral in November 2003. Wroblewski's heirs never asked Milovanovic whether she had already pledged the account. Nor did American Savings have any duty to inform Wroblewski's heirs of such information. And there is no evidence that American Savings permitted Milovanovic to alter, transfer, pledge, or negotiate the certificate of deposit after it signed the notice of restriction. We find that American Savings did not violate the notice of restriction by applying the previously-pledged certificate of deposit to pay off Milovanovic's mortgage.

▆ We therefore conclude that the trial court erred by granting summary judgment for Tokarski and denying summary judgment for American Savings on Count II.[4]

---

4. In concluding his appellate brief, Tokarski    argues that all of American Savings's actions

### III. TOKARSKI'S DAMAGES AND AMERICAN SAVINGS'S DEFENSE OF SET–OFF

Because we have concluded that the trial court erred by granting summary judgment for Tokarski and denying summary judgment for American Savings on Counts I and II, we need not address the issue of damages and set-off.

In light of the foregoing, we reverse the trial court's judgment and remand with instructions to enter summary judgment for American Savings.

Reversed and remanded.

NAJAM, J., and DARDEN, J., concur.

amount to constructive fraud. This issue was not presented to the trial court and is thus waived. *See Dunaway,* 813 N.E.2d at 387.